IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

FILED
JAMES BONINI
CLERK

08 AUG 27 PM 4:42

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

| | |
|---|---|
| SHERYL L. SZEINBACH<br>3055 Carriage Lane<br>Columbus, Ohio 43221<br><br>Plaintiff<br><br>v.<br><br>THE OHIO STATE UNIVERSITY<br>190 North Oval Mall<br>Columbus, Ohio 43210<br><br>Defendant | Civil Action Case No:<br><br>Judge: **2:08 cv 822**<br><br>**JUDGE HOLSCHUH**<br>Magistrate Judge **MAGISTRATE JUDGE KEMP**<br><br>Jury Demand Endorsed Herein |

## COMPLAINT

Plaintiff Sheryl L. Szeinbach Ph.D. ("Plaintiff"), for her Complaint against

Defendant The Ohio State University ("OSU"), alleges as follows:

### PARTIES, JURISDICTION, VENUE, AND EXHAUSTION OF ADMINSTRATIVE REMEDIES

1. Plaintiff is an individual residing in the State of Ohio, City of Columbus.

2. Plaintiff's employment at OSU began in 1999.

3. OSU is an instrumentality of the State of Ohio with its principal place of business in Franklin County, Ohio. OSU has been at all times an employer within the meaning of Title VII of the Civil Rights Act of 1964 as amended.

4. This suit is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 USC § 2000e et. seq, (the "Act").

5. This Court has jurisdiction to hear this case pursuant to 28 USC § 1331 because it arises under the laws of the United States. Plaintiff seeks the Court's jurisdiction under the Act.

6. Venue is proper under 28 USC §1391 because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this district.

7. Plaintiff complied with administrative prerequisites by filing a dual charge of discrimination with the Ohio Civil Rights Commission and the Equal Employment Opportunity Commission. Plaintiff's Charge of Discrimination is attached hereto as *Exhibit 1*.

8. On July 24, 2008, a Notice of Right To Sue from the Equal Employment Opportunity Commission was requested and mailed to Plaintiff entitling her initiation of a civil action in the appropriate forum within 90 days of the receipt of the Notice. A copy of this Notice is attached hereto as *Exhibit 2*. Plaintiff filed and commenced this action within the Notice's 90-day deadline.

## FACTUAL ALLEGATIONS

9. Plaintiff met OSU Assistant Professor Enrique Seoane-Vazquez ("Seoane") when he was hired on or about August 19, 2002.

10. Seoane's national origin is Spanish.

11. Dr. Milap Nahata ("Nahata") is the Chair of the Division of Pharmacy Practice ("Division") and Administration of OSU's College of Pharmacy ("College"). In 2004, Nahata appointed Seoane as a member of Division's search committee to fill a faculty opening.

12. While conducting this faculty search, Plaintiff, Seoane, and other search committee members developed concerns about the qualifications and background of one of the faculty opening finalists - Dr. Rajesh Balkrishnan ("Balkrishnan"). These concerns include, but were not limited to, Balkrishnan's admission that he experienced conflicts with colleagues at the university at which he was then employed.

13. Nahata withheld from the search committee Plaintiff and Seoane's concerns regarding Balkrishnan and hired Balkrishnan without a hiring recommendation from the search committee.

14. Balkrishnan and Nahata's national origin is Indian.

15. Upon information and belief, Nahata told Balkrishnan that Plaintiff and Seoane opposed Balkrishnan's hiring.

16. Shortly after Balkrishnan joined the Division in 2004, Plaintiff and Seoane observed Nahata's preferential treatment of faculty and students of Indian national origin (and) Nahata's detrimental treatment of faculty of Spanish origin. For example, upon information and belief, Nahata told one of Seoane's Indian graduate students that because this student was Indian the student should be working with Balkrishnan.

17. During Division meetings in 2004, Nahata and Balkrishnan consistently dismissed Plaintiff's suggestions and concerns regarding Seoane and other Division issues. As a result, Plaintiff began to cut back on her attendance at Division meetings to focus on her other responsibilities at the College.

18. OSU gave Plaintiff a 2.75% salary increase in 2004 even though it gave other similarly situated faculty salary increases of at least 3.5 %.

19. Upon information and belief, OSU retaliated against Plaintiff for her support of Seoane by giving her a lower 2004 salary increase than other similarly situated faculty members.

20. Before Balkrishnan finished his first year at OSU, Nahata appointed Balkrishnan to prepare and present Seoane's 2005 annual review to the Division.

21. Because Balkrishnan's 2005 annual review of Seoane contained prejudicial and discriminatory materials, Plaintiff sent Dean Robert Brueggemeier ("Brueggemeier") an email expressing her concerns about Balkrishnan's conduct. on February 10, 2005. *See Exhibit 3.*

22. On or about August 22, 2005, Seoane submitted a discrimination and retaliation complaint to OSU regarding actions taken by Balkrishnan, Nahata, and other Division faculty. ("Seoane's OSU Complaint").

23. Plaintiff supported the filing and prosecuting of Seoane's OSU Complaint.

24. Upon information and belief, in 2005-07, Balkrishnan told some of his students, including but not limited to Manjiri Pawaskar, Sujanta Jayawant, Rajul Shenolikar, and/or Adam Uhas, not to take courses taught by Plaintiff.

25. In 2005, Balkrishnan, Nahata, and OSU employees Philip Schneider ("Schneider") and Dr. Craig Pederson ("Pederson") retaliated against Plaintiff for her support of Seoane by discouraging Division students from working with Plaintiff and Seoane.

26. In 2005, Balkrishnan, Nahata, Schneider, and Pederson retaliated against Plaintiff for her support of Seoane by discouraging students in the OSU Hospital Pharmacy Administration program from working with Plaintiff and Seoane.

27. OSU considers a decrease in the number of graduate advisees a faculty member advises as a component of the faculty member's yearly evaluation.

28. OSU gave Plaintiff a 2.75% salary increase in 2005 even though it gave other similarly situated faculty salary increases of at least 3.3 %.

29. Upon information and belief, OSU retaliated against Plaintiff for her support of Seoane's OSU Complaint by giving her a lower 2005 salary increase than other similarly situated faculty members.

30. In 2006, Plaintiff continued to raise concerns about discriminatory and retaliatory actions taken by Balkrishnan, Nahata, Schneider, and Pederson against Plaintiff Seoane, and their students, but the College took no corrective action.

31. Upon information and belief, Dean Robert W. Brueggemeier ("Brueggemeier") and/or Nahata retaliated against Plaintiff for her support of Seoane's OSU Complaint, by removing a website created in 2006 to attract students to programs involving Plaintiff and Seoane while allowing Balkrishnan to operate a similar website.

32. On or about September 6, 2006, Seoane filed a Charge of Discrimination with the Equal Employment Commission and the Ohio Civil Rights Commission (collectively referred to as "Seoane's EEOC Complaint"); (Seoane's OSU Complaint and Seoane's EEOC Complaint are collectively referred to as "Seoane's Protected Activities").

33. Plaintiff supported the filing and prosecuting of Seoane's EEOC Complaint.

34. On or about November 3, 2006, Plaintiff drafted an email to OSU employee James Dalton who chaired Seoane's four-year review. Plaintiff's email highlighted Nahata's discriminatory and retaliatory involvement in Seoane's four-year review. *See, Exhibit 4.*

35. Although OSU eventually barred Nahata and Balkrishnan from participating in Seoane's four-year review, Nahata and Balkrishnan continued to retaliate against Plaintiff for her support of Seoane's OSU Complaint.

36. In December of 2006, Plaintiff filed a complaint with OSU's Office of Human Resources ("OSU's HR Office") alleging Brueggemeier retaliated against Plaintiff for her support of Seoane's EEOC Complaint ("Plaintiff's OSU Retaliation Complaint").

37. OSU gave Plaintiff a 1.00% salary increase in 2006.

38. Upon information and belief, OSU retaliated against Plaintiff for her support of Seoane's Protected Activities by giving her a lower 2006 salary increase than other similarly situated faculty members.

39. On or about April 27, 2007, Balkrishnan attended a presentation by a graduate student working with Plaintiff. At this presentation, Balkrishan witnessed discussions about the differences and similarities between two publications authored in part by Plaintiff - *Influence of Patient Care Provider On Patient Health Outcomes In Allergic Rhinitis, Annals of Allergy, Asthma and Immunology vol. 95, pp 167-174 August 2005* ("Plaintiff's 2005 Publication"); and *The Impact Of Allergic Rhinitis On Work Productivity, Journal Primary Care Respiratory*

*Journal, Volume 16, Number 2, pp. 98 – 105, 2007.* ("Plaintiff's 2007 Article")(Plaintiff's 2005 Publications and Plaintiff's 2007 Publications are collectively referred to as "Plaintiff's Publications").

40. On or about April 28, 2007, Balkrishnan sent an email to the editor of one of Plaintiff's Publications stating, Plaintiff's Publications contained "identical results just analyzing the data slightly differently." *See, Exhibit 5* (containing 4/28/07 email from Balkrishnan to Dr. Mark Levy).

41. Upon information and belief, Balkrishnan knew, or should have known, his statements in Exhibit 5 regarding Plaintiff's Publications were false.

42. Upon information and belief, Balkrishnan sent Exhibit 5 in order to retaliate against Plaintiff for her support of Seoane's Protected Activities.

43. Prior to sending Exhibit 5, Balkrishnan asked Nahata to advise Balkrishnan on how to address Plaintiff's Publications. *See, Exhibit 6* (containing Balkrishnan's 4/28/08 email to Nahata). In this email, Balkrishnan stated Plaintiff's Publications contained "exactly identical results just analyzing the data differently." *Id.*

44. Upon information and belief, Balkrishnan knew, or should have known, his statements in Exhibit 6 regarding Plaintiff's Publications were false.

45. Upon information and belief, Balkrishnan published Exhibit 6 to retaliate against Plaintiff for her support of Seoane's Protected Activities.

46. On or about May 1, 2007, Balkrishnan wrote Nahata, Brueggemeier, Pedersen, and OSU Associate Dean of Research Dr. William Hayton ("Hayton") an email stating, Balkrishnan would "defer to . . . [them] the final decision" regarding how

to use Plaintiff's Publications against Plaintiff. *See, Exhibit 7* (containing Balkrishnan's 5/1/07 email to Nahata, Brueggemeier, Pedersen, and Hayton).

47. Upon information and belief, Balkrishnan, Nahata, Brueggemeier, Pedersen, Schneider, and/or Hayton formulated strategies in 2007 regarding how to use Plaintiff's Publications as a venue for retaliating against Plaintiff for her support of Seoane's Protected Activities ("Retaliation Plan").

48. Upon information and belief, the Retaliation Plan included Balkrishnan's May 1, 2007 email to professors at University of Maryland, Tufts University, University of Arkansas For Medical Sciences, and University of San Diego. *See Exhibit 8* (containing Balkrishnan's 5/1/07 email to Drs. Shaya, Martin, Brixner, and Papath). In this email, Balkrishnan forwarded the professors the following information: (1) Balkrishnan's April 28, 2007 email to an editor of one of Plaintiff's Publications; and (2) the editor's reply to that email. Balkrishnan's email also contained the statement; "[t]his research is being presented as new research at the ISPOR 2007 meeting. Also this identical research has been previously presented at an ISPOR meeting as well (2005)." *Id.*

49. One of the individuals who received Exhibit 8 ceased potential employment discussions with Plaintiff after receiving Exhibit 8 from Balkrishnan.

50. Upon information and belief, those involved in the Retaliation Plan knew, or should have known, the statements contained in Exhibit 8 regarding Plaintiff's Publications were false.

51. Upon information and belief, those involved in planning, preparing, and/or sending of Exhibit 8 did so with the intention of retaliating against Plaintiff for her support of Seoane's Protected Activities.

52. Upon information and belief, the Retaliation Plan included Balkrishnan's May 2007 filing of a whistleblower complaint with OSU's HR Office ("Balkrishnan's WB Compliant"). This Complaint alleged, among other things, Plaintiff's Publication violated OSU's Interim Policy and Procedures On Misconduct in Research or Scholarly Activities ("Misconduct Policy.")

53. On or about May 31, 2007, the editors of one of Plaintiff's Publications investigated and rejected Balkrishnan's allegations that Plaintiff's Publications amounted to duplicate publications. Rather, the editors found Plaintiff's reuse of a data set without a cross reference was an "oversight [that] was not intentional." *See, Exhibit 9* (containing Mark Levy's 8/15/07 email to Plaintiff).

54. Nevertheless, on or about June 5, 2007, OSU's Office of Research Compliance's Research Misconduct Administrator Jennifer S. Moseley ("Moseley") charged Plaintiff with violating the Misconduct Policy's prohibitions regarding research misconduct related to Plaintiff's Publications ("Misconduct Charge").

55. On or about June 5, 2007, Brueggemeier violated the Misconduct Policy by presenting and discussing the Misconduct Charge with Plaintiff without first advising Plaintiff of her right to legal counsel.

56. On or about June 11, 2007, Plaintiff requested the Misconduct Charge be dismissed or addressed via the Misconduct Policy's alternative dispute resolution

provisions. But, Brueggemeier refused Plaintiff's request and recommended the formation of a Committee of Initial Inquiry to investigate Plaintiff's Publications.

57. Upon information and belief, Brueggemeier refused Plaintiff's request that the Misconduct Charge be dismissed or addressed via the Misconduct Policy's alternative dispute resolution provisions in order to retaliate against Plaintiff for her support of Seoane's Protected Activities.

58. On or about July 3, 2007, the OSU-HR Office notified Brueggemeier that he could not retaliate against Plaintiff or any individuals and/or witnesses involved in Plaintiff's OSU Retaliation Complaint.

59. On or about July 3, 2007, the OSU-HR Office recommended Balkrishnan be notified he could not retaliate against Plaintiff or other individuals and/or witnesses involved in Plaintiff's OSU Retaliation Complaint.

60. On or about August 12, 2007, Plaintiff filed a Whistleblower Complaint with OSU-HR asking for an investigation into Brueggemeier, Hayton, Nahata, and Balkrishnan's retaliation against Plaintiff. ("Plaintiff's WB Complaint.")

61. Three days later, Balkrishnan sent an email to approximately 100 OSU employees stating, Plaintiff's Publications created a "matter of great shame and disrepute to the Ohio State University College of Pharmacy." *See, Exhibit 10* (containing Balkrishnan's 8/15/07 email to College faculty).

62. An editor of one of Plaintiff's Publications that received Balkrishnan's email stated, Balkrishnan's email "misrepresent[ed] and overstate[d] the contents of our carefully written editorial, which concluded that although there was an oversight,

this was not intentional." *See, Exhibit 9* (containing Mark Levy's 8/15/07 email to Plaintiff).

63. Upon information and belief, Balkrishnan knew, or should have known, the statements about Plaintiff's Publications contained in Exhibit 10 were false.

64. Upon information and belief, Balkrishnan published Exhibit 10 in order to retaliate against Plaintiff for her support of Seoane's Protected Activities.

65. On or about August 21, 2007, Balkrishnan violated the Misconduct Policy's confidentiality provisions by sending another email to approximately 100 OSU employees. This email contained Balkrishnan's correspondence with editors of Plaintiff's Publications. *See, Exhibit 11* (containing Balkrishnan's 8/21/07 email to College Faculty).

66. Upon information and belief, OSU never charged Balkrishnan with violating the Misconduct Policy's confidentiality provisions for publishing Exhibit 11.

67. Upon information and belief, Balkrishnan published Exhibit 11 in order to retaliate against Plaintiff for her support of Seoane's Protected Activities.

68. In 2007, Balkrishnan called one of Plaintiff's students a "bitch" and told students of Plaintiff that they were being negatively impacted by their involvement with Plaintiff.

69. On or about September 4, 2007, during a College meeting with students and faculty, Balkrishnan jumped out of his chair, confronted Plaintiff with clenched fists and stated, "you just need to shut up and stop being a bitch."

70. Upon information and belief, OSU's employment file on Balkrishnan contains no disciplinary action against Balkrishnan for his actions against Plaintiff on or about September 4, 2007.

71. On or about November 6, 2007, OSU's Committee of Initial Inquiry's Final Report found Plaintiff's Publications were "not duplicate publications." But, the Committee determined Plaintiff's reuse of a data set without a cross-reference was sufficient to warrant further investigation under OSU Rule 3335-5-04.

72. OSU gave Plaintiff a 3.00% salary increase in 2007.

73. Upon information and belief, OSU retaliated against Plaintiff for her support of Seoane's Protected Activities by giving her a lower 2007 salary increase than other similarly situated faculty members.

74. Evidence of OSU's retaliation includes, but is not limited to, OSU's offer on or about March 13, 2008, to dismiss its investigation into Plaintiff's Publications if Plaintiff agreed – among other things - not to participate in the tenure and promotion process of Seoane.

75. Upon information and belief, OSU's investigation into Plaintiff's Publications is retaliatory because – while OSU continues its disciplinary investigation into Plaintiff's Publications - OSU failed to discipline Brueggemeier for engaging in more egregious publication practices that appear to violate commonly accepted practices within the scientific research community which include, but are not limited to, duplicate publications.[1] *See e.g., Exhibit 12* (containing *Journal of*

---

[1] According to *Committee on Publication Ethics (COPE), Guidelines On Good Publication Practice (2003),* duplicate publications can occur when authors of previously published materials such as proceedings fail to "disclose details of related papers . . . and

*Clinical Endocrinology & Metabolism*'s Editor-In-Chief Paul Ladenson M.D.'s 3/18/08 letter to Brueggemeier detailing issues related to Brueggemeier's "dual publications of data); *Exhibit 13* (containing Seoane's misconduct charge against Brueggemeier regarding redundant materials contained in articles published by Brueggemeier); *Exhibit 14* (containing the *Final Report Of the Committee of Initial Inquiry Concerning Allegations of Misconduct In Research or Scholarly Activity* detailing the Committee's findings regarding allegations of research misconduct by Brueggemeier ("Final Report")); *Exhibit 15* (containing Seoane's 6/24/08 appeal of the Final Report); and *Exhibit 16* (containing MaGrath's 7/16/08 letter to Seoane dismissing Seoane's complaint against Brueggemeier).

76. Upon information and belief, OSU's investigation into Plaintiff's Publications is retaliatory because – while OSU continues its disciplinary investigation into Plaintiff's Publications - OSU failed to discipline Nahata for engaging in publication practices that appear to violate commonly accepted practices within the scientific research community which include, but are not limited to, duplicate

---

similar papers in press." p. 71. See also, ICMJE - Uniform Requirements for Manuscripts Submitted to Biomedical Journals 6/7/2008 (stating, "[w]hen submitting a paper, the author <u>must always</u> make a full statement to the editor about all submissions and previous reports (including meeting presentations and posting of results in registries) that might be regarded as redundant or duplicate publication of the same or very similar work. The author <u>must</u> alert the editor if the manuscript includes subjects about which the authors have published a previous report or have submitted a related report to another publication. Any such report <u>must</u> be referred to and referenced in the new paper. Copies of such material should be included with the submitted paper to help the editor decide how to handle the matter. If redundant or duplicate publication is attempted or occurs without such notification, authors should expect editorial action to be taken. At the least, prompt rejection of the submitted manuscript should be expected. If the editor was not aware of the violations and the article has already been published, then a notice of redundant or duplicate publication will probably be published with or without the author's explanation or approval. *ICMJE - Uniform Requirements for Manuscripts Submitted to Biomedical Journals 6/7/2008, (emphasis added).*

publications. *See e.g., Exhibit 17* (containing Nahata's 2005 American Journal of Hypertension publication and 2004 Pediatr Nephrol publication).

77. Upon information and belief, OSU's investigation into Plaintiff's Publications is retaliatory because – while OSU continues its disciplinary investigation into Plaintiff's Publications - OSU failed to discipline Balkrishnan for engaging in publication practices that appear to violate commonly accepted practices within the scientific research community. These practices include, but are not limited to, potential data disparity and/or conflict of interest issues related to one of Balkrishnan's publications addressing a study funded by Takeda Pharmaceuticals and another of Balkrishnan's publications addressing a study funded by GlaxoSmithKline. *See e.g., Exhibit 18* (containing Professor Emeritus H.B. Kostenbauder's letter to the editor published in *Clinical Therapeutics,* Vol. 30, November 5, 2008 addressing conflicts of interest that appear in two of Balkrishnan's publications).

78. Upon information and belief, OSU's investigation into Plaintiff's Publications is retaliatory because – while OSU continues its disciplinary investigation into Plaintiff's Publications - OSU failed to discipline Moseley and Division faculty member Robert Lee ("Lee") - for engaging in publication practices that appear to violate commonly accepted practices within the scientific research community. These practices include, but are not limited to, failure to cross reference previous publications, simultaneous submission of publications without proper notice, and/or notice of negative data. *See e.g., Exhibit 19.*

79. Evidence of OSU's retaliation includes, but is not limited to, OSU's failure to discipline Dean Brueggemeier for his May 5, 2008 violation of the Misconduct Policy I(D)'s confidentiality provisions. Dean Brueggemeier violated this provision by detailing OSU's investigation into Plaintiff's Publications to Cancer Letter's Editor Manfred Schwab. *See, Exhibit 20* (containing 5/11/08 Letter From Brueggemeier To Manfred Schwab).

80. Evidence of OSU retaliation and/or discrimination, includes, but is not limited to, Division faculty's discouragement of students from taking classes taught by Plaintiff.

81. Evidence of OSU retaliation and/or discrimination, includes, but is not limited to, the Division's 2008 modification and reduction of Plaintiff's teaching responsibilities without involving Plaintiff in these changes.

## COUNT 1
## RETALIATION: TITLE VII, 42 U.S.C. §2000e, et seq.

82. The allegations of the prior paragraphs are incorporated as if fully set forth below.

83. Plaintiff engaged in a protected activity when she filed a discrimination and retaliation complaints with OSU's HR Office.

84. Plaintiff engaged in a protected activity when she filed complaints with the Ohio Civil Rights Commission and the Equal Employment Opportunity Commission.

85. Plaintiff engaged in protected activity when she consulted an attorney regarding her legal rights.

86. Plaintiff's consultation with counsel was protected activity under Ohio law.

87. OSU unlawfully retaliated against Plaintiff in violation of Title VII, 42 U.S.C. §2000e, et seq., because of Plaintiff's aforementioned protected activities.

88. OSU offered reasons for its retaliation against Plaintiff that are merely a pretext for unlawful retaliation in violation of Title VII, 42 U.S.C. §2000e, et seq.

89. OSU's retaliation against Plaintiff was willful, malicious, spiteful, and with a reckless disregard for her legal rights.

90. As a direct and proximate result of OSU's conduct as set forth above, Plaintiff suffered loss of compensation, loss of fringe benefits, loss of reputation, humiliation, embarrassment, emotional distress, and loss of time and money endeavoring to protect herself from OSU's unlawful retaliation, including costs, experts' fees, and attorneys' fees.

## COUNT 2
## DISCRIMINATION AND RETALIATION BY ASSOCIATION: TITLE VII, 42 U.S.C. §2000e, et seq.

91. The allegations of the prior paragraphs are incorporated as if fully set forth below.

92. Plaintiff's support and association with Seoane and his filing and prosecuting Seoane's Protected Activities are protected activities under Title VII, 42 U.S.C. §2000c.

93. OSU violated Title VII, 42 U.S.C. §2000c by retaliating and discriminating against Plaintiff for her support and association with Seoane and the filing and prosecuting of Seoane's Protected Activities.

94. OSU's reason(s) for discriminating and retaliating against Plaintiff were a pretext

for OSU's unlawful retaliation in violation of Title VII, 42 U.S.C. §2000c, et seq.

95. OSU's discrimination and retaliation against Plaintiff because of her association with Seoane was willful, malicious, spiteful, and with a reckless disregard for her legal rights.

96. As a direct and proximate result of OSU's conduct as set forth above, Plaintiff suffered loss of compensation, loss of fringe benefits, loss of reputation, humiliation, embarrassment, emotional distress, and loss of time and money endeavoring to protect herself from OSU's unlawful discrimination and retaliation, including costs. experts' fees, and attorneys' fees.

## RELIEF REQUESTED

**WHEREFORE,** Plaintiff prays this Court:

    a. Award Plaintiff an amount in excess of $25,000 as compensation for humiliation, embarrassment, loss of reputation, and other emotional distress;

    b. Award Plaintiff all lost compensation, including lost wages, income from research grants, and lost benefits;

    c. Grant injunctive relief to prevent OSU from any further acts of discrimination and/or retaliation against Plaintiff, including, but not limited to a dismissal of all charges related to Plaintiff's Publication;

    d. Award Plaintiff punitive damages;

    e. Award Plaintiff reasonable attorneys' fees and the cost of this action; and

f.  Grant Plaintiff such other and further relief as may be just and equitable.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury.

Respectfully Submitted,

_____
Eric J. Rosenberg (0069958)
The Rosenberg Law Office Co LPA
395 North Pearl Street
Granville, Ohio 43023
740.644.1027 phone
866.498.0811 fax
rosenberglawoffice@gmail.com