IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Sheryl L. Szeinbach, | : | |
| Plaintiff | : | Civil Action 2:08-cv-822 |
| v. | : | |
| The Ohio State University, | : | Magistrate Judge Abel |
| Defendant | : | |

**ORDER**

This matter is before the Court on plaintiff Sheryl L. Szeinbach's January 8, 2013 motion for reconsideration of the Court's December 19, 2012 Order denying her motion for leave to conduct limited discovery related to Dr. Terry S. Elton (doc. 200). On March 18, 2013, the Court heard oral argument concerning plaintiff's motion.

**I.    Background**

Szeinbach requests leave to conduct limited discovery related to recently discovered evidence that she maintains supports her arguments that defendant's asserted legitimate, nondiscriminatory reasons were pretextual. Plaintiff seeks discovery regarding Professor Terry S. Elton, a professor in the OSU College of Pharmacy, whose article, published in the journal of the American Physiological Society, was recently retracted on the basis that it contained improperly prepared data. Plaintiff argues that OSU never scrutinized Elton's research and publications under its research misconduct policies in the manner that OSU investigated allegations regarding

her publications.

## II. Arguments of the Parties

### A. Plaintiff Sheryl L. Szeinbach

Plaintiff argues that two newly published documents suggest that the Court should allow Szeinbach to conduct discovery into Elton's research misconduct. On December 26, 2012, the Department of Health and Human Services Office of Research Integrity ("ORI") issued its Findings of Research Misconduct against Elton. In these findings, ORI found Elton engaged in research misconduct by falsifying and/or fabricating data. Elton's conduct dated back to 2004. Plaintiff also relies on the January 6, 2013 Columbus Dispatch article detailing a settlement between federal officials, The Ohio State University ("OSU") and Elton in which OSU and Elton agreed to retract six of Elton's publications because of a pattern of falsified images. Despite these findings, the initial OSU College of Pharmacy ("COP") cleared Elton any wrongdoing.

The Dispatch article reported that ORI concluded that the initial COP committee failed to recognize Elton's deception. The ORI asked OSU to remove any one who had a personal working relationship with Elton to be removed from the panel investigating the manner and that OSU officials ensure that the committee had members with experience understanding the reportedly falsified data. The second COP committee agreed with ORI's conclusion that Elton had engaged in fraud.

2

Plaintiff argues that in appointing faculty with working and/or personal relationships to committees tasked with investigating Elton and Brueggemeir's research misconduct, OSU violated 42 C.F.R. § 50.103(d)(8)-(9).

Szeinbach argues that to be similarly situated, plaintiff need only show that they are similar in all relevant aspects. A reasonable jury could find that the Visions and Strategy Group ("VSG") and/or Brueggemeier's decisions to overlook Elton's research misconduct is evidence of pretextual retaliation. Both the interim research misconduct policy and the current policy gave Brueggemeier the same powers to force a university level investigation and to select the members of a COP committee to investigate Szeinbach of Elton.

According to plaintiff, the evidence suggests that with respect to Szeinbach, Brueggemeir and VSG members required a university level investigation that could have led to plaintiff's termination. With respect to Elton, however, Brueggemeier and the initial COP committee excused Elton's research misconduct and did not subject him to a university level investigation.

### B. Defendant The Ohio State University

Defendant argues that Elton is not a valid comparator to Szeinbach. The research misconduct investigation of Elton was not in the time frame relevant to the research misconduct violation of Szeinbach. Elton was not only a professor in the COP, but he also had an appointment in the Davis Heart and Lung Research Institute. Plaintiff, unlike Elton, was not investigated by a COP committee.

OSU argues that discovery in this case closed over two and one-half years ago. None of plaintiff's discovery requests related to any investigation of Elton, nor did they request any information regarding any research misconduct investigations by OSU after 2009. Plaintiff's CII research misconduct investigation ended in May 2008, almost two years before the deadline for completing discovery. Nothing in plaintiff's newly discovered evidence implies any knowledge by OSU of the allegations against Elton prior to the close of discovery.

The University Research Committee Interim Policy and Procedures concerning Misconduct in Research or Scholarly Activities ("Interim Policy") was in effect at the time the Committee of Initial Inquiry ("CII") investigating plaintiff concluded its investigation o May 15, 2008. The University Policy and Procedures concerning Research Misconduct ("the current policy") was adopted on May 29, 2008. The current policy does not include within the definition of research misconduct the provision that was the basis of the CII determination regarding possible research misconduct by Szeinbach.

The initial COP committee referred to by plaintiff was not a CII committee. Instead, the COP committees that investigated Elton were 04 Process committees. For a faculty member accused of research misconduct to be investigated by an 04 Process committee, a CII committee must have determined that there was sufficient evidence of possible scientific misconduct to warrant an investigation under the University's disciplinary rules. OSU maintains that any factual allegations regarding Elton's 04

4

Process and the COP Committees are not relevant to Szeinbach, who was never in the 04 Process.

Despite plaintiff's allegation to the contrary, Brueggemeier could not have excused or overlooked Elton's alleged research misconduct because it could not have gotten into the 04 Process unless the Dean had sent it to a CII, and then following the determination CII, sent it on to the COP standing college committee for the 04 Process investigation.

Defendant argues that plaintiff's assertion that an overlap in membership of the initial COP committee in Elton's 04 Process and the VSG could demonstrate that the VSG exhibited pretextual retaliatory conduct towards Szeinbach is without merit. The VSG was formed in 2007 to explore options for taking action against disruptive behaviors and to change the culture of the division. The Sixth Circuit concluded that Szeinbach failed to present any evidence of injury or harm resulting from the VSG. Plaintiff does not allege that the VSG or its members took any part in the research misconduct investigation of her. As a result, defendants maintains that whether a member of the VSG served on the initial COP committee for Elton is irrelevant to plaintiff's research misconduct claim.

Defendant further argues that it did not violate any federal regulations in its investigation of Brueggemeier's alleged research misconduct. Brueggemeier's research was not federally funded and not subject to 42 C.F.R. § 50.103(d)(8)-(9).

5

**III.     Discussion**

Courts consider five factors when deciding whether to reopen or extend discovery: (1) when plaintiff learned of the issue that is the subject of discovery; (2) how reopening discovery would affect the ruling at issue; (3) the length of the previous discovery period; (4) whether plaintiff was dilatory; and (5) whether defendant was responsive to prior discovery requests. *Lee v. Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 444–45 (6th Cir.2011) (citing *Audi AG v. D'Amato*, 469 F.3d 534, 541 (6th Cir.2006)).

Here, plaintiff learned of Elton's apparent misconduct and the related investigation well after the close of discovery. The delay in discovery, however, was not the result of counsel's lack of diligence. Plaintiff actively pursued discovery in this case. In fact, approximately thirty-two depositions have been filed in this case.[1] I note however, that plaintiff's discovery requests did not seek information concerning investigations of research misconduct that occurred after 2009. As a result, it appears that plaintiff was not concerned with locating comparators during this time frame.

Plaintiff had ample opportunity to take discovery. Moreover, the limitation under Rule 30(a)(2)(A)(i), Fed. R. Civ. P. that each side take no more than 10 deposition was not enforced. The period for conducting discovery was lengthy. Discovery began in

---

[1]At the oral argument hearing, counsel for plaintiff indicated that if the motion for reconsideration was granted, he envisioned the need for an additional six to seven depositions.

6

January 2009, and the deadline for completing non-expert discovery was ultimately extended until May 28, 2010.

Despite some disputes with respect to discovery requests, plaintiff's request for additional discovery is not the result of defendant's failure to respond to prior discovery requests. In this case, the decisive factor is how reopening discovery would affect a ruling at issue in this case. There is no pending motion at issue, and although plaintiff characterizes his motion pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, defendant has not yet filed its motion for summary judgment. Plaintiff maintains, however, that this evidence will be relevant to showing that defendant's legitimate, nondiscriminatory reason is pretextual.[2]

---

[2]To make out a prima facie case of retaliation, a plaintiff must establish that: (1) she engaged in activity protected by Title VII; (2) this exercise of protected rights was known to the defendant; (3) the defendant thereafter took an adverse employment action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. *Martin v. Toledo Cardiology Consultants*, Inc. 548 F.3d 405, 412 (6th Cir. 2008)(citing *Ford v. Gen. Motors Corp.*, 305 F.3d 545, 552-53 (6th Cir.2002)). Once the plaintiff has established a prima facie case of retaliation, the burden shifts to defendant to demonstrate a non-discriminatory reason for its actions. After a showing is made by the defendant, plaintiff has the burden of demonstrating that the reason asserted by the defendant is not the real reason, but rather a pretext for discrimination. *See Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 713 (6th Cir.2007) (citing *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007)(holding that the *McDonnell Douglas* burden-shifting framework applies to retaliation claims)). Plaintiff maintains that a comparison of the treatment of Szeinbach and Elton will show that OSU's stated reasons for its actions were pretextual.

> In *Mitchell v. Toledo Hospital*, 964 F.2d 577 (6th Cir. 1992), the Sixth Circuit stated: It is fundamental that to make a comparison of a discrimination plaintiff's treatment to that of non-minority employees, the plaintiff must show that the "comparables" are similarly-situated in all respects. *Stotts v. Memphis Fire Department*, 858 F.2d 289 (6th Cir.1988). Thus, to be deemed "similarly-situated", the individuals with whom the plaintiff seeks to

7

Based on a review of the relevant factors, I conclude that Dr. Elton cannot be considered a comparator to Dr. Szeinbach. Plaintiff emphasizes that the initial COP committee concluded that Elton had not engaged in wrongdoing and that this decision was reconsidered only after pressure was applied by federal regulators. These committee decisions all occurred after Dean Brueggemeier referred Elton to the 04 Process. Because the research misconduct policy was amended, plaintiff was never subjected to the 04 Process. Despite the recommendation from the CII that she undergo that process, Dr. Brueggemeier did not refer Szeinbach to the 04 Process.  As a result, a comparison of Szeinbach and Elton's treatment would not assist the trier of fact in determining whether OSU's stated reason for investigating the allegation of Szeinbach's research misconduct was pretextual.

---

compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. *Mazzella v. RCA Global Communications, Inc.*, 642 F. Supp. 1531 (S.D. N.Y. 1986), aff'd, 814 F.2d 653 (2d Cir.1987); *Lanear v. Safeway Grocery*, 843 F.2d 298 (8th Cir.1988) (plaintiff must prove that he and the white employee were similarly situated in all respects and that the other employee's acts were of comparable seriousness to his own); *Cox v. Electronic Data Systems Corp.*, 751 F. Supp. 680 (E.D. Mich.1990).

964 F.2d at 583. Courts should make "an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee." *Ercegovich v. Goodyear Tire & Rubber Co.*,  154 F.3d 344, 352 (6th Cir. 1998). Exact correlation, however, is not required between the employees. Rather, the employees must be similar in all of the relevant aspects. *Id*. (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994).

It appears that Elton's alleged misconduct was more egregious than that alleged of Szeinbach. As a result, evidence that Elton was subjected to the 04 Process and that Szeinbach was not, is not evidence of pretext. Rather, it is what would be expected.

The degree to which the first committee, the University-wide CII committee, investigated Elton's conduct is not relevant, because the investigation of Szeinbach ended there while the investigation of Elton only began there.

Despite plaintiff's assertion that Brueggemeier treated Elton more favorably than he did Szeinbach, Elton would not have been sent to the 04 Process (involving a committee comprised of COP faculty members) absent Brueggemeier's agreement. The Dean, in fact, treated Szeinbach more favorably by not referring the misconduct charge against her to the 04 Process.

Plaintiff also argues that the fact that professor Kinghorn, a COP faculty member, was on both Elton's 04 Process committee and Szeinbach's CII committee somehow makes Elton's circumstances relevant to Szeinbach's. Although Kinghorn was a member of the 04 Process committee for Elton and a member of the CII committee that investigated Szeinbach, he was the only member of the CII that did not recommend that Szeinbach be referred to the 04 Process. Kinghorn's membership on both committee provides no evidence that Szeinbach was treated less favorably than a similarly situated employee.

For the reasons set out above, I conclude that the two investigations were not sufficiently close in time to make a valid comparison. The discovery plaintiff seeks is

9

not relevant and will not assist the trier of fact in deciding the issues in this case. Accordingly, plaintiff Sheryl L. Szeinbach's January 8, 2013 motion for reconsideration of the Court's December 19, 2012 Order denying her motion for leave to conduct limited discovery related to Dr. Terry S. Elton (doc. 200) is DENIED.

                                          s/Mark R. Abel
                                          United States Magistrate Judge