IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Sheryl L. Szeinbach,                      :

        Plaintiff,               :

      v.                              :    Case No. 2:08-cv-822

The Ohio State University,                :

        Defendant.               :    Magistrate Judge Kemp


<u>OPINION AND ORDER</u>

    This matter is before the Court on plaintiff Sheryl Szeinbach's application for an interim award of attorney's fees, expenses and pre-judgment interest and a supplemental application seeking the same.  Defendant The Ohio State University has filed a response and the motions have been fully briefed.  The parties have requested an evidentiary hearing on the applications.  For the following reasons, the request for an evidentiary hearing will be granted.

I.  <u>Background</u>

    As the Court of Appeals explained in its August 10, 2012 decision (Doc. 186), this case involves retaliation claims brought by Ms. Szeinbach against her employer, Ohio State.  The case was referred to now-retired Magistrate Judge Mark R. Abel for all proceedings; after he granted summary judgment to Ohio State, the Court of Appeals reversed and remanded the case for trial on Ms. Szeinbach's claims of differential salary increases and research misconduct investigation.

    After remand, the case was tried to a jury.  The jury returned a verdict in Ms. Szeinbach's favor on a claim of coworker retaliation and awarded her damages in the amount of $513,368.00.  Shortly thereafter, Ms. Szeinbach filed her initial

application (Doc. 358).  Subsequently, the Court reduced the damage award by $213,368.00 to reflect the fact that Ms. Szeinbach was not entitled to back pay.  Ms. Szeinbach then filed her supplemental application (Doc. 384).

Thereafter, Ms. Szeinbach appealed the Court's order reducing the jury award.  Ohio State filed a cross-appeal as to the judgment and the Court's Order on a motion for a new trial. The Court of Appeals granted Ohio State's motion to voluntarily dismiss the cross-appeal.  The Court stayed its consideration of Ms. Szeinbach's applications pending resolution of the appeal. (Doc. 399).  The Court of Appeals affirmed the judgment and Ms. Szeinbach sought a writ of certiorari from the United States Supreme Court.  The Supreme Court denied the writ of certiorari by order dated October 6, 2016.  Consequently, Ms. Szeinbach's applications are now ready for decision.

Following the Supreme Court's ruling, this Court held a status conference.  At that conference the parties indicated that their briefing identifies a threshold issue to be decided by the Court arising from an offer of judgment Ohio State made to Ms. Szeinbach on January 17, 2014, and its impact on post-offer costs.  This issue was raised for the first time in Ohio State's response to Ms. Szeinbach's fee applications.  It is to this issue that the Court will turn first.

## II.  The Offer of Judgment

The starting point for the Court's consideration of the effect of Ohio State's offer of judgment is the language of the offer itself.  The offer, attached to Ohio State's response as Exhibit A (Doc. 394-1), states in its entirety:

To: Sheryl Szeinbach, Plaintiff, and Eric J. Rosenberg, Attorney for Plaintiff

Pursuant to Fed.R.Civ.P. 68, The Ohio State University, Defendant in the above captioned action, makes the following offer of judgment to Plaintiff

-2-

Sheryl Szeinbach:

1.  A judgment in favor of Plaintiff and against Defendant for Ohio Hundred Twenty Six Thousand Dollars [$126,000], in full satisfaction of any and all damages relating to any and all of Plaintiff's claims against Defendant in this action.

2.  A judgment in favor of Plaintiff and against Defendant that Plaintiff's salary will be adjusted from her current salary of Ohio Hundred Twenty Six Thousand Six Hundred Fifty Five Dollars and Sixty Eight Cents [$126,655.68] to an annual salary of One Hundred and Thirty Two Thousand Three Hundred Fifty Five Dollars [$132,355], effective no later than 30 days after the entry of judgment.

3.  A judgment in favor of Plaintiff and against Defendant for Three Hundred Thousand Dollars [$300,000], in full satisfaction of all costs, expenses, and attorneys' fees incurred and/or accrued by Plaintiff to date of this offer in connection with this action and which provides that Defendant shall have no liability to Plaintiff for any additional costs, expenses, and attorneys' fees of Plaintiff in connection with this action.

This offer of judgment shall resolve the entirety of Plaintiff's claims against Defendant in this action, including but not limited to all claims and entitlement to backpay, front pay, compensatory damages, statutory damages, equitable relief, injunctive relief and all claims and entitlement to attorneys' fees, litigation expenses, and all costs of this action and any interest. Where applicable, monetary payments will be subject to any required tax and benefit withholdings.

Pursuant to Fed.R.Civ.P. 68, Plaintiff has 14 days from service of this offer to accept it in writing.

Also necessary to the Court's consideration of the threshold issue identified by the parties is the language of Rule 68. That Rule states, in relevant part:

**Rule 68. Offer of Judgment**

(a) Making an Offer; Judgment on an Accepted Offer. At least 14 days before the date set for trial,

a party defending against a claim may serve on an
opposing party an offer to allow judgment on specified
terms, with the costs then accrued.  If, within 14 days
after being served, the opposing party serves written
notice accepting the offer, either party may then file
the offer and notice of acceptance, plus proof of
service.  The clerk must then enter judgment.

(b) Unaccepted Offer.  An unaccepted offer is
considered withdrawn, but it does not preclude a later
offer.  Evidence of an unaccepted offer is not
admissible except in a proceeding to determine costs.
...

(d) Paying Costs After an Unaccepted Offer.  If
the judgment that the offeree finally obtains is not
more favorable than the unaccepted offer, the offeree
must pay the costs incurred after the offer was made.

Applying Rule 68 in the context of an offer of $426,000 and
Ms. Szeinbach's damage award of $300,000, Ohio State asserts that
she is not entitled to recover an award for any costs incurred
after January 17, 2014.  Ohio State explains its position as
follows.  Its offer allowed judgment to be taken against it for
both damages and costs.  Although Rule 68 does not mandate it, in
an effort to illustrate its basis for the offer, it itemized the
respective amounts that it believed represented damages and
costs.  It states that it did not intend, by its proposed
breakdown, to restrict the payout amounts to the specific
categories and if Ms. Szeinbach had accepted, she was free to
distribute the total as she chose.  Ohio State asserts that its
having drafted the offer in this manner does not invalidate the
offer.  In short, Ohio State argues that because the $426,000
offer was more than the $300,000 in damages awarded to Ms.
Szeinbach, Rule 68 shifts responsibility for all post-offer
costs, which in this Title VII action also includes her attorney
fees, to Ms. Szeinbach.  Ohio State relies primarily on Marek v.
Chesny, 473 U.S. 1 (1985) in support of its position.

-4-

In her reply, Ms. Szeinbach contends that the cases cited by Ohio State, and Marek in particular, actually support her entitlement to her post-offer costs, including her attorney fees. Further, she suggests, relying on Fulps v. City of Springfield, 715 F.2d 1088, 1091-92 (6th Cir. 1983), that Sixth Circuit precedent supports Ohio State's division of the offer of judgment into discrete parts. More importantly, however, Ms. Szeinbach contends that this voluntary division of amounts within the offer of judgment prevents Ohio State from suggesting that the entire amount of the offer of judgment was intended as damages. Finally, she explains that, under Marek, the amount of the offer of judgment here is to be compared to the $300,000 damages award she received plus the $467,743.92 in pre-offer attorney fees that she incurred. She contends that this amount, even with some potential for reduction to the amount of pre-offer costs, well exceeds Ohio State's $426,000 offer of judgment.

As the Court understands the parties' arguments, Ohio State focuses on Ms. Szeinbach's potential discretion to re-allocate the amounts set forth in its offer of judgment. Ohio State's position seems to suggest that this is the controlling issue here. This is so despite Ohio State's citation to Marek for the principle that Rule 68 is not so much concerned with an offer's particular components but with the judgment to be allowed against the defendants. As explained below, the numerical allocation contained within the offer of judgment is not central to the Court's application of Rule 68. Consequently, the Court will not devote any time to this issue other than to state that Ohio State's focus is misplaced. Instead, the Court will limit its consideration to the comparison required by Rule 68.

Here, there is no question that Ohio State contends that the proposed judgment amount was $426,000. There is also no question that this offer was intended to apply to both a damages award and

-5-

all costs, expenses and attorney fees.  Ohio State's position
assumes, without any discussion, that Ms. Szeinbach's damages
award of $300,000 constitutes the judgment finally obtained for
Rule 68 purposes.  To the contrary, Ms. Szeinbach contends that,
under Marek, her pre-offer attorney fees and costs must be added
to the $300,000 award for purposes of a Rule 68 comparison.  In
making this argument, Ms. Szeinbach seems to recognize that the
amount of her pre-offer fees and costs is subject to a
reasonableness analysis by the Court.  For the following reasons,
the Court agrees with Ms. Szeinbach.

In a case involving, in part, claims arising under the
federal Truth in Lending Act and the Equal Credit Opportunity
Act, the Court of Appeals recognized that "the only way in which
Rule 68 directly implicates awards of attorney's fees is in
situations where such fees are made an element of 'costs' -
whether such by statute (42 U.S.C. §1988 is the most familiar)
example) or as a matter of contract."  McCain v. Detroit II Auto
Finance Center, 378 F.3d 561, 563 (6th Cir. 2004).  There is no
question that, for purposes of the Court's analysis in this case,
"Title VII provides that 'the court, in its discretion, may allow
the prevailing party [in litigation under Title VII] ... a
reasonable attorney's fee ... as part of the costs.'  42 U.S.C.
§2000e-5(k)."  Isabel v. City of Memphis, 404 F.3d 404, 415 (6th
Cir. 2005).  Further, the standard of awarding attorney's fees to
a prevailing party under §1988 applies to awards under Title VII.
Virostek v. Liberty Twp. Police Dep't/Tr., 14 Fed.Appx. 493, 510
(6th Cir. 2001).  The parties agree that attorney fees fall
within the definition of costs in this case.

In McCain, the Court of Appeals, while noting the
distinguishing circumstances, acknowledged that Marek, an action
arising under 42 U.S.C. §1983, is the seminal case on the subject
of Rule 68 offers and costs.  In doing so, the Court looked to

-6-

Marek to explain that:

> If an offer recites that costs are included or
> specifies an amount for costs, and the plaintiff
> accepts the offer, the judgment will necessarily
> include costs; if the offer does not state that costs
> are included and an amount for costs is not specified,
> the court will be obliged by the terms of the Rule to
> include in its judgment an additional amount which in
> its discretion, it determines to be sufficient to cover
> the costs.  In either case, however, the offer has
> *allowed* judgment to be entered against the defendant
> both for damages caused by the challenged conduct and
> for costs.  Accordingly, it is immaterial whether the
> offer recites that costs are included, whether it
> specifies the amount the defendant is allowing for
> costs, or for that matter, whether it refers to costs
> at all.

McCain, 378 F.3d at 563-564, quoting Marek, 473 U.S. at 6.

Further, the Court of Appeals noted that, because Rule 68
refers only to costs but not attorney fees, Marek spoke to the
issue of attorney fees as follows:

> In other words, all costs properly awardable in an
> action are to be considered within the scope of Rule 68
> "costs."  Thus, absent congressional expressions to the
> contrary, where the underlying statute defines "costs"
> to include attorney's fees, we are satisfied such fees
> are to be included as costs for purposes of Rule 68.

McCain, 378 F.3d at 564, quoting Marek, 473, U.S. at 9.  Given
the circumstances of the case before it, the Court of Appeals
clarified that nothing in Marek addresses the relationship
between a Rule 68 offer and an award of attorney fees not
categorized as costs.  Id.

Roughly a decade later in Hescott v. City of Saginaw, 757
F.3d 518, 528 (2014), also a §1983 action, the Court of Appeals
reiterated that Marek held "that attorneys' fees are included in
the definition of 'costs' under Rule 68 so long as fees are
'properly awardable [as costs] under the relevant substantive
statute.'"  The Court of Appeals acknowledged the Supreme Court's

-7-

reasoning in Marek that, "because a prevailing party in a civil-
rights suit may recover attorneys' fees 'as part of costs' under
§1988, a plaintiff who receives a judgment less than the
defendant's Rule 68 settlement offer cannot recover his or her
own post-offer attorney fees."  Id., citing Marek, 473 U.S. at 9.
The Hescott Court cautioned, however, that Marek "drew a 'strict
link' between [Rule 68] and the underlying statute that
authorizes a fee award.'"  Id., citing Payne v. Milwaukee Cnty.,
288 F.3d 1021, 1027 (7th Cir. 2002).

The Court of Appeals in Hescott also explained that "Rule 68
requires the court to compare a settlement offer that includes
"costs then accrued" with the 'judgment" that the [claimant]
finally obtains.'"  Id. at 527.  Referring to this requirement as
an "apples-to-apples comparison" it noted that the "'judgment'
used ... includes not just the damages award, but also the
claimant's pre-offer costs and fees actually awarded." Id.,
citing Marek, 473 U.S. at 7.  In explaining the comparison
required by Rule 68, the Court of Appeals acknowledged that this
approach is consistent with that employed by other courts of
appeals.  See id., citing Bogan v. City of Boston, 489 F.3d 417,
431 (1st Cir. 2007); Marryshow v. Flynn, 986 F.2d 689, 692 (4th
Cir. 1993); Grosvenor v. Brienen, 801 F.2d 944, 948 (7th Cir.
1986).

In Doe v. Rutherford County, Tenn. Bd. of Educ. 86 F.Supp.3d
831, 847 (2015), a case involving Title IX retaliation, the court
relied on Hescott in determining how it "should measure the value
of the 'judgment' [the plaintiff] 'finally obtain[ed].'"  Based
on Hescott, and noting the other cases cited with approval by the
Court of Appeals in that case, the Rutherford County court
concluded that it was required to conduct a "two-step analysis"
requiring that: "(1) the court [] determine what pre-offer fees
and expenses (i.e. the 'costs' under §1988) are reasonable under

-8-

the circumstances; and (2) ... then add the value of the jury award to that amount ... and compare that number to the value of the offer."  Id.  In reaching this conclusion, the Rutherford County court looked to Marryshow and Bogan as support for its rationale.  In Marryshow, the Fourth Circuit explained:

> Rule 68 requires that a comparison be made between an offer of judgment that includes "costs then accrued" and the "judgment finally obtained"....  To make a proper comparison between the offer of judgment and the judgment obtained when determining, for Rule 68 purposes, which is the more favorable, like "judgments" must be evaluated.  Because the offer includes costs then accrued, to determine whether the judgment obtained is more favorable ... the judgment must be defined on the same basis - *verdict plus costs incurred as of the time of the offer of judgment.*

Id., quoting Marryshow, 986 F.2d at 692.

The Rutherford County court further explained that in Bogan, the First Circuit indicated "that crediting a plaintiff's requested amount for pre-offer fees and costs, rather than the amount actually awarded by the court after conducting the 'reasonableness' analysis, would be illogical."  Id., quoting Bogan, 489 F.3d at 431.  Rather, a "'prevailing party could always evade the Rule 68 bar simply by asking for a sufficiently large fee award so that the judgment finally obtained exceeds the offer.'"  Id.

The Court finds the two-step analysis identified in Rutherford County directly applicable here.  Consequently, before the Court can conclude whether Ms. Szeinbach is entitled to recover any costs, including attorney fees, she incurred after Ohio State made its offer of judgment on January 17, 2014, it is required to determine the amount of pre-offer fees and expenses that are reasonable under the circumstances of this case.  That is the issue to which the Court will now turn.

III.  Ms. Szeinbach's Pre-Offer Attorney Fees and Costs

-9-

A.  Legal Standard

Generally, parties are required to pay their own attorney's
fees.  Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 550 (2010).
Congress enacted 42 U.S.C. §1988(b) as an exception to this
general rule "in order to ensure that federal rights are
adequately enforced."  Id.  Under that statute, a court has
discretion to award a prevailing party, other than the United
States, a reasonable attorney's fee.  42 U.S.C. §1988.  Title VII
also provides for a recovery of reasonable attorney's fees by a
prevailing plaintiff.  42 U.S.C. §2000e-5(k).  As noted above,
the standard of awarding attorney's fees to a prevailing party
under §1988 applies to awards under Title VII.  Virostek, 14
Fed.Appx. at 509.

"Although §1988 uses permissive language regarding fee
awards, 'the Supreme Court has read [§1988] as mandatory where
the plaintiff prevails and special circumstances are absent.'"
Hescott, 757 F.3d at 523, quoting Deja Vu v. Metro. Gov't of
Nashville & Davidson Cnty., Tenn., 421 F.3d 417, 420 (6th Cir.
2005).  A party is considered a prevailing party if she
"succeed[s] on any significant issue in litigation which achieves
some of the benefit the parties sought in bringing suit."
Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  In Hensley, the
Supreme Court explained that '[t]he most useful starting point
for determining the amount of a reasonable fee is the number of
hours reasonably expended on the litigation multiplied by a
reasonable hourly rate."  Id.  This amount is referred to as the
"lodestar."  Garner v. Cuyahoga Cnty. Juvenile Ct., 554 F.3d 624,
642 (6th Cir. 2009).

"The award-seeking party should submit evidence of the hours
worked and the rates sought."  The Northeast Ohio Coalition for
the Homeless v. Husted, 831 F.3d 686, 702 (6th Cir. 2016), citing
Hensley, 461 U.S. at 433.  "If 'documentation of hours is

-10-

inadequate, the district court may reduce the award accordingly.'" Id. Fee applicants must exercise "billing judgment" meaning counsel is expected to "exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice is ethically obligated to exclude such hours from his fee submission." Id. Courts are required to exclude from the lodestar calculation hours that were not reasonably expended. Id. "Determination of an appropriate fee award 'should not result in a second major litigation.'" Abernathy v. Corinthian Colleges, Inc., 2014 WL 4272723 *5 (S.D. Ohio Aug. 29, 2014), quoting Hensley, 461 U.S. at 437.

B. The Fee Applications

As noted above, the issue presented by the offer of judgment was not raised until Ohio State's response. Consequently, Ms. Szeinbach's applications are not neatly divided in terms of pre- and post-offer attorney fees and costs. Ms. Szeinbach's initial application seeks $949,968.13 in interim attorney fees and expenses. This amount is divided as follows. The bulk of the amount is attributable to $827,920.00 for billable time spent by her lead counsel in this litigation, Eric Rosenberg; his associate David Ball; and Paul Bittner, an attorney at Schottenstein, Zox and Dunn, Mr. Ball's former firm. She proposes that Mr. Rosenberg and Mr. Ball be compensated at the following rates: (a) $325.00 per hour from 2011 to present; (b) $275.00 per hour from 2009 - 2010; and (c) $225.00 per hour from 2007 - 2008. Additionally, Ms. Szeinbach seeks compensation for time spend by Diane Jaquish, an attorney who assisted Mr. Rosenberg throughout the 14-day jury trial, at the rate of $200.00 per hour for 223.9 hours for a total of $44,780.00. Further, Ms. Szeinbach seeks compensation at the rate of $40.00 per hour for 205.45 hours of time spent by two legal assistants

for a total of $8,218.00.  She also requests an interest award on her attorney fees of $9,853.72, reflecting an interest rate of 2.35 percent over the time period from 2007 through 2014. Finally, Ms. Szeinbach requests $53,752.71 in non-attorney fee costs incurred from September 2007 through May - June 2014.

Ms. Szeinbach contends that the award she seeks is reasonable and not subject to reduction because her successful and unsuccessful claims arise from a common core of facts. Further, she maintains that the requested award is proportionate to her damages award.  She also seeks $5,443.75 in attorney fees for preparation of the fee application and prejudgment interest.

In her supplemental application, Ms. Szeinbach requests an additional $66,869.50 in attorney fees and costs broken down as follows.  She seeks $2,372.00 for copies of trial transcripts. Additionally, she seeks $59,800 in attorney fees for 184 hours spent by counsel in preparing a memorandum contra Ohio State's motion for a new trial and $4,875.00 in attorney fees for 15 hours spent by counsel on various other activities.  She also requests an award of $300.00 for time spent by one of Mr. Rosenberg's legal assistants in reviewing the time sheets attached to both the original and supplemental applications. Finally, she notes that $477.50 should be deducted from the original petition due to an overstatement of hours and reiterates her request for prejudgment interest.

Both of Ms. Szeinbach's applications are supported by affidavits from Mr. Rosenberg and copies of billing records.  She requests a hearing on her applications.

In response, Ohio State identifies $419,308.50 in attorney fees and $23,300.72 in costs that Ms. Szeinbach seeks relating to the pre-offer time period.  Within this time period, Ohio State contends that, at most, Ms. Szeinbach's records indicate that she paid a total amount of only $179,106.09 in attorney fees and

-12-

costs. Ohio State asserts that the amount of costs Ms. Szeinbach identifies must be reduced or denied because counsel's hourly rate is unreasonable, billing records are deficient, the application seeks compensation for excessive, redundant and unnecessary hours, and time spent on claims unrelated to the co-worker retaliation claim is non-compensable.

More specifically, Ohio State points out that Ms. Szeinbach has not cited any independent evidence of market rates for counsel litigating a Title VII claim in central Ohio but that an attorney's billing rate can be a reliable indicator of market rate. Consequently, Ohio State contends that Ms. Szeinbach's counsel should be compensated at the rates he actually charged. According to Ohio State, statements counsel made to the Court and invoices indicate that counsel's rate ranged from $100.00 to $175.00 per hour, and counsel led both Ohio State and the Court to believe this was an accurate rate. In further support of its position that counsel's billing rate is unreasonable, Ohio State asserts that the rate should reflect the quality of representation. Ohio State cites examples of conduct that it believes demonstrate that, despite success on the co-worker retaliation claim, Ms. Szeinbach's counsel should not command the requested hourly rate.

With respect to the issue of billing record deficiencies, Ohio State notes that Mr. Rosenberg admittedly lost billing records and this required him to obtain copies of cancelled checks from the bank to demonstrate Ms. Szeinbach's payments. When asked in deposition about the payments reflected by the checks and deductions for legal fees taken by her consulting company, Ms. Szeinbach could not specifically tie either to this litigation.

As for its contention that counsel billed excessive, redundant or unnecessary hours, Ohio State notes several examples

-13-

of what it characterizes as "do overs" necessitated by counsel's conduct. Further, it notes that many hours were spent by counsel as a result of "his refusal to follow the District Court's orders and even the law of the case as set forth by the Sixth Circuit." As an example, Ohio State cites to counsel's conduct involving discovery motions relating to Terry Elton and the decision to seek to amend the complaint twice following the Court of Appeals' first order directed to summary judgment.

With respect to the issue of unrelated claims, Ohio State makes two arguments. First, it argues that the co-worker retaliation claim on which Ms. Szeinbach ultimately prevailed relied on a more discrete set of facts than her much broader direct retaliation claims. As a result, Ohio State identifies sixteen individuals for which it believes Ms. Szeinbach's counsel cannot seek an award of fees relating to their depositions. Further, Ohio State contends that any fee award must reflect Ms. Szeinbach's level of success. To this point, Ohio State asserts that counsel's efforts relating to Robert Lee as a comparator were wasted as were his efforts relating to Drs. Roig and Donick who were both disqualified as experts. Ohio State further requests that all time related to Dr. Dembe, "a supposed expert named Fink," and "another individual named Higgon" be deducted.

While most of Ohio State's billing challenges contain citation to the record, it is minimal and not specifically directed to any line item billing. Further, Ohio State explains that it has addressed only a sampling of the many billing errors present. Consequently, Ohio State does not set forth a specific amount of attorney fees or costs it believes are appropriate for the pre-offer period. Noting the voluminous time entries, Ohio State joins in Ms. Szeinbach's request for a hearing on the fee award. Ohio State challenges Ms. Szeinbach's request to include expenses for food, parking and office supplies as taxable costs.

-14-

Finally, Ohio State contends that, because Ms. Szeinbach was not awarded back pay and because her complaint did not request prejudgment interest, the request made in her applications should be denied.

Ms. Szeinbach filed a lengthy reply addressing point by point Ohio State's response. In this reply, Ms. Szeinbach takes issue with Ohio State's position that counsel's billing rate ranged from $100.00 to $175.00 an hour. She attaches correspondence that she explains reflects lodestar updates demonstrating that in February, 2011, counsel began charging a rate of $225.00 per hour and that this rate increased to $275.00 per hour on January 30, 2014, and $325.00 per hour on July 2, 2014. She submitted an affidavit of counsel averring that all cancelled checks produced in discovery totaling $231,896.09 were applied to the outstanding balance in this litigation. She contends that the lodestar updates belie Ohio State's suggestion that it was misled to believe that the amount of fees to be sought was limited to the amount of the cancelled checks.

Beyond this, Ms. Szeinbach contends that any award short of her full request would allow a windfall to Ohio State at her expense. She maintains that consistent with Hensley, she is entitled to her full fee and, given Ohio State's litigation tactics, it cannot complain about counsel's expenditure of time. Moreover, she suggests, given the length of the litigation, Sixth Circuit precedent would fully support a $325 hourly rate for counsel for all time spent and Ohio State should appreciate the "step-down" hourly rates requested. Additionally, she cites cases from the Northern District of Ohio approving hourly rates of $475.00 or $350.00 for counsel with similar experience.

With respect to the issue of her failure to provide independent evidence of market value, Ms. Szeinbach explains that she could not find any reported cases on point. Further, her

-15-

counsel could not afford to retain an expert witness. Moreover, she asserts, expert testimony is not necessary because counsel is seeking an award below that approved in other reported decisions.

Ms. Szeinbach offers to reduce her request for costs to $989,083.26 and to forego her ability to enhance her costs by a 1.75 multiplier which she believes she would be entitled to under various Sixth Circuit precedent applying <u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714, 717-719 (5th Cir. 1974). She suggests, however, that a multiplier of at least 1.2 pursuant would be warranted in this case under the <u>Johnson</u> factors and requests that such a multiplier be applied in the event that a hearing is held. Further, she requests leave to call an expert witness to testify at the hearing in support of her applications and then requests that Ohio State be required to reimburse her for the costs involved.

In response to Ohio State's assertion that her counsel ran up hours at Ohio State's expense, Ms. Szeinbach both challenges at length Ohio State's specific examples and identifies examples she believes demonstrate precisely the opposite. Further, she asserts that no reduction of costs is warranted here because all of her Title VII retaliation claims arose from a common core of facts and related legal theories. She explains in some detail exactly how this is so. Finally, Ms. Szeinbach disputes that her counsel's billing records are deficient and devotes significant discussion to challenging Ohio State's position relating to time spent on numerous depositions.

C. <u>Discussion</u>

As noted, the preliminary issue before the Court is whether Ms. Szeinbach is entitled to recover post-offer of judgment costs, which in this case includes attorney fees, or whether such recovery is precluded by the operation of Rule 68. This issue does not warrant extensive discussion. Initially, however, the

-16-

Court notes that neither party addresses the issue of the
$5,699.32 salary adjustment ("Plaintiff's salary will be adjusted
from her current salary of Ohio Hundred Twenty Six Thousand Six
Hundred Fifty Five Dollars and Sixty Eight Cents [$126,655.68] to
an annual salary of One Hundred and Thirty Two Thousand Three
Hundred Fifty Five Dollars [$132,355]"), included in the offer of
judgment. Ohio State refers to the offer of judgment as totaling
only $426,000.00 ($126,000.00 for damages and $300,000.00 for
attorney fees and costs). In her reply, Ms. Szeinbach, in what
appears to be a typographical error, refers to the offer of
judgment as totaling $426,655.68. For purposes of its
discussion, the Court will construe the offer of judgment as
totaling $431,699.32.

As the above cases instruct, the Court need only conclude
that Ms. Szeinbach's pre-offer costs exceed $131,699.32 because
if that amount were added to her $300,000.00 damages award, it
would result in a judgment finally obtained by Ms. Szeinbach that
exceeds Ohio State's offer of $431,699.32. As indicated, Ms.
Szeinbach does not divide her fee applications neatly between
pre- and post-offer of judgment costs. Ohio State, however,
breaks down Ms. Szeinbach's identified pre-offer costs and
attorney fees as $419,308.50 and $23,3330.72, respectively, for a
total amount of $442,639.22. In the context of arguing that this
amount is clearly subject to reduction, Ohio State asserts that
Ms. Szeinbach's canceled checks demonstrate that she paid only
$179,106.09 in attorney fees and costs over the time period prior
to the offer of judgment. Without conducting a full
reasonableness analysis (and, based on the current state of the
record, it would be difficult for the Court to undertake one), it
is easy for the Court to conclude that, in order for Ms.
Szeinbach to be precluded from recovering her post-offer costs,
including attorney fees, the Court would have to find that she is

entitled to recover pre-offer costs and fees in an amount at least $47,406.77 less than the amount of fees and costs Ohio State contends that she paid during this time period. Further, the Court notes that, in its offer of judgment, Ohio State allocated $300,000 to attorney fees and costs. Arguably, this suggests that an award of pre-offer fees and costs below $131,699.32 would likely be unreasonable.

Ohio State attempts to minimize this reality in two ways. First, it contends that the offer of judgment was divided between costs and damages merely as a suggestion such that Ms. Szeinbach could allocate the entire offered amount in a different manner than Ohio State had structured. That is, presumably, Ms. Szeinbach could allocate less to fees and more to damages than Ohio State proposed. This argument is not persuasive for the reasons discussed above. Moreover, contract principles apply to Rule 68 offers and Ohio State's language unambiguously suggests that it believed $300,000.00 was an adequate amount of attorney fees to offer in settlement of this action. See <u>Sharpe v. Cureton</u>, 319 F.3d 259, 275 (6th Cir. 2003)(contract principles apply to Rule 68 offers).

Second, Ohio State argues that it is not clear whether all of the payments reflected by Ms. Szeinbach's canceled checks were applied to this litigation. In reply, however, Ms. Szeinbach has submitted an affidavit of counsel in which he states that all such payments were applied to her outstanding balance for costs and attorney fees associated with this litigation. <u>See</u> Affidavit of Eric J. Rosenberg, Doc. 396-2. In light of this, the Court has no difficulty concluding that the judgment finally obtained by Ms. Szeinbach for purposes of Rule 68 will, in all probability, exceed Ohio State's offer of judgment. That is sufficient to justify proceeding on her entire fee application.

With this in mind, the Court will grant the parties' request

-18-

for an evidentiary hearing on Ms. Szeinbach's fee applications. The parties are advised that, consistent with the above analysis, the hearing will be addressed to both pre- and post-offer of judgment fees and costs. Ms. Szeinbach is reminded that she must justify the reasonableness of her requested fee award. Blum v. Stenson, 465 U.S. 886, 897-898 (1984). Further, she bears the burden of documenting entitlement to the award. Reed v. Rhodes, 179 F.3d 453, 472 (6th Cir. 1999), citing Webb v. Dyer County Bd. of Educ., 471 U.S. 234, 242 (1985). She "'should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.'" Id., quoting Hensley, 461 U.S. at 433. As the Court of Appeals recently explained:

> ... preparing and supporting a fee application is more strenuous than invoicing an hourly client in the marketplace because much more detail and proof is required under §1988. Unlike privately paid attorneys, civil rights attorneys must support their bills with expert affidavits, distinguish between time spent on successful and unsuccessful claims, defend their billing rates, and compare them to similar attorneys. Such documentation is required for even the most basic fee petition if counsel are to meet their burden of proof.

The Northeast Ohio Coalition for the Homeless, 831 F.3d at 724.

Further, based on the Court's review of the billing records as currently submitted, Ms. Szeinbach is also reminded that "'clerical or secretarial tasks ought not be billed at lawyers' rates, even if a lawyer performs them.'" State Farm Fire & Cas. Co. v. Rowland Plumbing, Ltd., 2013 WL 5442302, *4 (N.D. Ohio Sept. 27, 2013), quoting Cleveland Area Bd. of Realtors v. City of Euclid, 965 F.Supp. 1017, 1022 (N.D. Ohio 1997). In fact, a "purely clerical activity is not billable at a paralegal's rate, or any rate at all, because such tasks are included in office overhead." Abernathy, 2014 WL 4272723, *16.

-19-

Ohio State is reminded that"'[a] district court has broad
discretion to determine what constitutes a reasonable hourly rate
for an attorney.'" Waldo v. Consumers Energy Co., 726 F.3d 802,
821 (6th Cir. 2013), quoting Wayne v. Village of Sebring, 36 F.3d
517, 533 (6th Cir. 1994).  Reasonable attorney fees are
calculated in light of the prevailing market rates in the
relevant community. Binta B. v. Gordon, 710 F.3d 608, 627 (6th
Cir. 2013); see also Adcock-Ladd v. Sec'y of Treasury, 227 F.3d
343, 350 (6th Cir. 2000).  That is  "'[t]he appropriate rate ...
is not necessarily the exact value sought by a particular firm,
but is rather the market rate in the venue sufficient to
encourage competent representation.'" Potter v. Blue Cross Blue
Shield of Michigan, 10 F.Supp.3d 737, 746 (E.D. Mich. 2014),
quoting Gonter v. Hunt Valve Co., 510 F.3d 610, 618 (6th Cir.
2007).  "The prevailing market rate is 'that rate which lawyers
of comparable skill and experience can reasonably expect to
command within the venue of the court of record.'" Adcock-Ladd
at 350.  "A district court is permitted to 'rely on a party's
submissions, awards in analogous cases, state bar association
guidelines, and its own knowledge and experience in handling
similar fee requests.'" Waldo, 726 F.3d at 821-822, quoting Van
Horn v. Nationwide Prop. & Cas. Ins. Co., 436 Fed.Appx. 496, 499
(6th Cir. 2011).

Finally, the Court notes that Ms. Szeinbach has included in
her fee applications a request for pre-judgment interest.  Ohio
State has opposed this request.  In her reply, Ms. Szeinbach
suggests her request hinges on the Court of Appeals' decision
regarding the back pay award.  As discussed, the Court of Appeals
has now issued its decision confirming Judge Abel's denial of a
back pay award.  Ms. Szeinbach also suggests that she "leaves the
resolution of this issue to this Court's discretion."  In doing
so, she attempts to distinguish this case from Abernathy, a Title

-20-

VII retaliation case in which Magistrate Judge King denied a discretionary award of pre-judgment interest for lack of support in the record.  She also notes that she is willing to forego this interest if the Court determines no hearing is required and it rejects the motion to stay.  Those contingencies did not occur.  Consequently, it may be that Ms. Szeinbach intends to pursue her request.  The current record, however, is insufficient to allow the Court to reach any conclusion that such a discretionary award is appropriate here.  However, if Ms. Szeinbach plans to seek pre-judgment interest, she may address that issue at the evidentiary hearing as well.

## IV.  Order

For the reasons set forth above, the parties' request for an evidentiary hearing on the plaintiff's attorney fee applications is granted.  The Clerk shall set this matter for hearing on March 29, 2017 at 10:00 a.m.

/s/ Terence P. Kemp
United States Magistrate Judge