IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


Sheryl L. Szeinbach,                    :

        Plaintiff,                      :

        v.                              :       Case No. 2:08-cv-822

The Ohio State University,              :
                                                Magistrate Judge Kemp
        Defendant.                      :



<u>OPINION AND ORDER</u>

        There has been much written lately about the cost and delay
associated with resolving cases in federal court.  While there is
literature on both sides of the question - some suggesting that
even with the recent changes to the Federal Rules of Civil
Procedure and with more active case management on the part of
judges, it still costs too much and takes too long to get a
decision in a federal case, and others pointing out that the
average time and expense to bring such a case to resolution is
not out of line - this case could serve as a poster child for the
argument that federal court litigation has become prohibitively
expensive.

        As numerous other opinions and orders issued by both this
Court and by the Court of Appeals for the Sixth Circuit reflect,
Dr. Szeinbach filed this case in 2008, asserting that she had
been unfairly targeted for investigation based on allegations of
research misconduct, and that the real motive behind Ohio State's
actions related to her filing of a discrimination claim and her
support of another colleague's similar claim.  After more than
two years of motions practice and discovery, the Court granted
summary judgment to Ohio State.  Dr. Szeinbach successfully
appealed that decision, although the appeal took another year and

a half to resolve.  Once the mandate issued, it took almost two more years for the case to proceed to trial, and then only after the Court issued a 72-page opinion and order denying a renewed motion for summary judgment.

The trial lasted fourteen days.  At the end, the jury returned a verdict in favor of Dr. Szeinbach on a claim of co-worker retaliation which was, according to the verdict, something that Ohio State supervisors or members of management either knew or had reason to know about, and also something that those same officials either condoned, tolerated or encouraged, or failed adequately to respond to.

Inevitably, a post-trial motion followed, which was granted in part and denied in part.  In the meantime, Dr. Szeinbach, as the prevailing party, moved for attorneys' fees under 42 U.S.C. §1988 and supplemented that motion.  Dr. Szeinbach then appealed Judge Abel's order granting some post-trial relief to Ohio State, and Ohio State cross-appealed.  The cross-appeal was dismissed, but Dr. Szeinbach persisted in her appeal, which ultimately (*i.e.* fifteen months later) was decided against her.  She then petitioned the United States Supreme Court for a writ of *certiorari* but was, again, unsuccessful.  While all that was happening, the attorneys' fees matter was stayed.

After the fee issue was reactivated, the Court made a preliminary ruling denying one of Ohio State's arguments about the effect of an offer of judgment, and it set the matter for a hearing.  The docket reflects that in the five months which elapsed since that order was entered, there were 24 additional docket entries made; the hearing was continued once; and the Court held two discovery conferences.  The two-day hearing then ensued.  By the time this Opinion and order will be issued, the case will have been pending for almost nine years. It is not surprising that Dr. Szeinbach's attorney is asking for a million-

dollar fee.  It is also not surprising that Ohio State's outside counsel, who handled this case for a period of time (but not including the trial, any of the post-trial motions or second appeal, and any proceedings on the attorneys' fees portion of the case), billed 12,400.45 hours of time for their work.  <u>See</u> Exhibit 15, p., 164.

It is not possible, at this point, to place either blame or responsibility on any one party or institution for this nine-year saga.  Some cases have to be tried.  This may have been one of them.  Some cases are very complex.  That appears to be true of this case as well.  The best that can be said now is that it is time for the Court to write what will hopefully be the final chapter(although given that this order is appealable, that is by no means certain).  The Court now turns to the issue of what is a reasonable fee for the time expended by Dr. Szeinbach's counsel in proving her case.

## I. <u>Attorneys' Fees</u>

Generally, parties are required to pay their own attorney's fees.  <u>Perdue v. Kenny A. ex rel. Winn</u>, 559 U.S. 542, 550 (2010).  Congress enacted 42 U.S.C. §1988(b) as an exception to this general rule "in order to ensure that federal rights are adequately enforced."  <u>Id</u>.  Under that statute, a court has discretion to award a prevailing party, other than the United States, a reasonable attorney's fee.  42 U.S.C. §1988.  Title VII also provides for a recovery of reasonable attorney's fees by a prevailing plaintiff.  42 U.S.C. §2000e-5(k).  The standard of awarding attorney's fees to a prevailing party under §1988 applies to awards under Title VII.  <u>Virostek v. Liberty Township Police Department/Trustees,</u> 14 Fed.Appx. 493, 509 (6th Cir. 2001).

"Although §1988 uses permissive language regarding fee awards, 'the Supreme Court has read [§1988] as mandatory where

-3-

the plaintiff prevails and special circumstances are absent.'"
Hescott v. City of Saginaw, 757 F.3d 518, 523 (6th Cir. 2014),
quoting Deja Vu v. Metro. Gov't of Nashville & Davidson Cnty.,
Tenn., 421 F.3d 417, 420 (6th Cir. 2005). A party is considered
a prevailing party if she "succeed[s] on any significant issue in
litigation which achieves some of the benefit the parties sought
in bringing suit." Hensley v. Eckerhart, 461 U.S. 424, 433
(1983). In Hensley, the Supreme Court explained that '[t]he most
useful starting point for determining the amount of a reasonable
fee is the number of hours reasonably expended on the litigation
multiplied by a reasonable hourly rate." Id. This amount is
referred to as the "lodestar." Garner v. Cuyahoga Cnty. Juvenile
Ct., 554 F.3d 624, 642 (6th Cir. 2009).

    "The award-seeking party should submit evidence of the hours
worked and the rates sought." The Northeast Ohio Coalition for
the Homeless v. Husted, 831 F.3d 686, 702 (6th Cir. 2016), citing
Hensley, 461 U.S. at 433. "If 'documentation of hours is
inadequate, the district court may reduce the award
accordingly.'" Id. Fee applicants must exercise "billing
judgment," meaning counsel is expected to "exclude from a fee
request hours that are excessive, redundant, or otherwise
unnecessary, just as a lawyer in private practice is ethically
obligated to exclude such hours from his fee submission." Id.
Courts are required to exclude from the lodestar calculation
hours that were not reasonably expended. Id. Courts are not
required to act as "green-eyeshade accountants" and "achieve
auditing perfection" but must simply do "rough justice." Fox v.
Vice, 563 U.S. 826, 838 (2011). Finally, "[d]etermination of an
appropriate fee award 'should not result in a second major
litigation.'" Abernathy v. Corinthian Colleges, Inc., 2014 WL
4272723 *5 (S.D. Ohio Aug. 29, 2014), quoting Hensley, 461 U.S.
at 437.

## A.  Reasonable hourly rates

The legal standard for calculating a reasonable hourly rate is exceedingly well-documented in the case law.  A reasonable hourly rate is typically "the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." Geier v. Sundquist, 372 F.3d 784, 791 (6th Cir. 2004). Judge Marbley recently explained the standard in Autrey v. Food Concepts International, LP, 2017 WL 1163845, at *3-4 (S.D.Ohio March 29, 2017) in this way:

> In determining a reasonable hourly rate, "[t]he appropriate rate ... is not necessarily the exact value sought by a particular firm, but is rather the market rate in the venue sufficient to encourage competent representation." Sykes v. Anderson, 419 Fed.Appx. 615, 618 (6th Cir. 2011) (internal quotations omitted). The market rate is "the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." Gonter v. Hunt Value Co., 510 F.3d 610, 618 (6th Cir. 2007). Comparable skill and experience, of course, means skill and experience in the specific area of law at issue in the case. Snide v. Disc. Drug Mart, Inc., No. 1:11-cv-244, 2013 U.S. Dist. LEXIS 165584, *22-*25, 2013 WL 6145130 (N.D. Ohio Oct. 30, 2013).
>
> In making its determination, the court may "consider a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience from handling similar requests for fees." Northeast Ohio Coalition for Homeless v. Husted ("NEOCH"), No. 2:06-cv-896, 2014 WL 4829597, at *12 (S.D. Ohio Sept. 29, 2014) (vacated in part on other grounds) (quoting Van Horn v. Nationwide Prop. & Cas. Ins. Co., 436 Fed.Appx. 496, 499 (6th Cir. 2011)). The fee applicant bears the burden to "produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Blum v. Stenson, 465 U.S. 886, 896 (1984).

The Court may also consider an attorney's own normal billing rates to help calculate a reasonable fee.  Hadix v. Johnson, 65 F.3d 532, 536 (6th Cir. 1995).  It is with this standard in mind that the Court will consider the issue of the reasonable hourly rate requested by Dr. Szeinbach's counsel.

Dr. Szeinbach's lead counsel from the preparation and filing of the complaint through the fee hearing was Eric Rosenberg. He currently practices with Rosenberg & Ball, a small firm located in Granville, Ohio.  At the hearing, Mr. Rosenberg testified that he started practicing law in 1998.  Prior to Dr. Szeinbach's trial, he had tried over 20 cases.  He started his career with the Ohio Attorney General's Office, eventually working in the Court of Claims section where his work included employment law cases.  See Exhibits 3, 4, and 5. He subsequently entered private practice where he practiced almost exclusively in the area of litigation and gained experience in a number of trials.  This period of Mr. Rosenberg's private practice included a short time at Bricker & Eckler during which he billed at an hourly rate of $225.  At some point, he left the practice of law for a time to work overseas with a non-profit.  He eventually returned to the practice of law and in 2008, Mr. Ball joined his practice.  His previous work in this Court has included Title VII cases.  See Exhibit 7. He has had cases in other federal courts as well.  His current hourly rate is $350 per hour and he has focused his practice on Title IX litigation since 2016. In the original fee petition, Mr. Rosenberg sought fees at the rate of $225 for time spent in 2007 - 2008; $275.00 for time spent in 2009 - 2010; and $325.00 from 2011 through the filing of the original fee petition.

Diane Jaquish, an attorney practicing in an of counsel capacity with Mr. Rosenberg, testified regarding her time expended in this litigation.  According to Ms. Jaquith, she

-6-

assisted Mr. Rosenberg with trial preparation. Her efforts included witness preparation and the preparation of deposition summaries. She also attended every day of the trial, observed and took notes. She graduated from Capital University Law School and began practicing law in 2004 or 2005. Her areas of practice include social security disability, veterans disability, employment, and workers' compensation. She created her invoice found at pages 54-55 of Exhibit 13 based on her daily tracking and review of her hours. Her invoice reflects that she billed $44,780.00 for 223.9 hours at a $200 hourly rate.

David Ball also testified at the hearing. According to his testimony, he graduated from the University of California at Berkeley School of Law and was admitted to practice in 1991. He spent three years practicing with a San Francisco firm in the area of employment law and five years in Columbus with the firm of Schottenstein, Zox & Dunn practicing in the area of labor and employment law. While at the Schottenstein firm, he represented Dr. Szeinbach in connection with research misconduct allegations. Another lawyer in that firm, Paul Bittner, also represented her in connection with that matter. Mr. Ball testified that the time billed for that representation is reflected in the invoices contained in Plaintiff's Exhibit 13. He was allowed to carry this time with him when he left Schottenstein and he has submitted it as part of the fee petition here. The invoices reflect total billing in the amount of $37,658.03 and indicate an hourly rate for Mr. Ball ranging from $205 to $225 and an hourly rate of $295 for Mr. Bittner.

Mr. Ball further testified that he began practicing with Mr. Rosenberg in 2010. He focuses primarily on employment law. During his time with Mr. Rosenberg, he has worked on discrete projects related to Dr. Szeinbach's litigation. His requested hourly rate in this matter is the same as Mr. Rosenberg's.

Dr. Szeinbach presented the expert testimony of attorney Frederick M. Gittes in support of her fee petition. Mr. Gittes is a Columbus lawyer with extensive civil rights experience representing both plaintiffs and defendants (but primarily plaintiffs). He began practicing law in 1975. Focusing on the issue of the reasonableness of the hourly rates, Mr. Gittes testified that the hourly rates requested by counsel are substantially below the market rate for attorneys in central Ohio engaged in employment and other civil rights litigation. Much of Mr. Gittes' testimony was directed to Mr. Rosenberg's rates but he noted that the rates requested Mr. Ball and Ms. Jaquith are also easily justified in comparison to the rates awarded to other attorneys. Several factors contributed to Mr. Gittes' view, most notably the amount of trial experience Mr. Rosenberg had acquired prior to Dr. Szeinbach's trial. From Mr. Gittes' perspective, Mr. Rosenberg's trial experience was significant. He directly compared Mr. Rosenberg's requested hourly rates to those awarded to counsel in three specific decisions from courts within this district. These examples provided a range of awards from $225 for an attorney during the second and third year of practice to an award of $410 for an attorney whom Mr. Gittes viewed as having the same years of experience as Mr. Rosenberg during the trial in this case. In his report, Mr. Gittes stated that, in his experience, lead partners at small plaintiff-side employment law firms commonly charge between $400 and $500 per hour. He testified that he generally bills at an hourly rate of $425.00.

Ohio State's expert witness was Marc Fishel, a Columbus attorney with a significant defense practice on behalf of public employers throughout Ohio. With respect to the issue of the reasonableness of the hourly rates, Mr. Fishel's opinion was that the hourly rates requested by Dr. Szeinbach's counsel are not justified. Mr. Fishel identified several factors which

contributed to his view.  First, he did not consider Mr.
Rosenberg's employment law experience to be significant.
Further, he found no indication that Mr. Rosenberg's regular
hourly rate was $325.00.   Most significant to Mr. Fishel,
however, was that, from his perspective, Mr. Rosenberg's trial
conduct and work product were not what would be expected of an
attorney commanding that rate.  Mr. Fishel specifically cited
examples of Mr. Rosenberg's conduct that he believed were
"emblematic" of inexperience or learning on the job.  He also
explained his view that Mr. Rosenberg's  billing practices
indicated a level of inexperience.  Mr. Fishel's opinion was that
the hourly rates Mr. Rosenberg actually charged Dr. Szeinbach are
reasonable and more reflective of his skill and experience.

        Taking all of the above into account, and applying its own
knowledge and experience, the Court concludes that a reasonable
hourly rate for Mr. Rosenberg's time in this case is $325.   The
Court is satisfied from all of the testimony that this hourly
rate is consistent with the prevailing market rate in central
Ohio for attorneys with skill and experience comparable to Mr.
Rosenberg's.  Additionally, the Court believes this amount
represents a reasonable balance between the significance of Mr.
Rosenberg's experience as recognized by Mr. Gittes and the issues
identified by Mr. Fishel.  The Court recognizes that Mr. Fishel
made a valid point about the quality of Mr. Rosenberg's work
(particularly as to his record-keeping) but concludes that this
factor is more pertinent to the number of hours reasonably spent
on the case than on the billing rate.  Importantly, the Court
finds that the rate of $325 per hour is consistent with the goal
of awarding fees sufficient to attract competent counsel without
allowing a windfall.

        This brings the Court to the issue of how best to account
for the length of time this case has been pending.  "'Clearly,

compensation received several years after the services were rendered ... is not equivalent to the same dollar amount received reasonably promptly as the legal services were performed, as would normally be the case with private billings.'" Bank One, N.A. v. Echo Acceptance Corp., 595 F.Supp.2d 798, 801 (S.D. Ohio 2009), quoting Missouri v. Jenkins, 491 U.S. 274, 283 (1989). "District courts can use either current rates or past rates with interest when calculating the lodestar amount to provide an adjustment for delay in payment." Id. at 802; see also Perdue v. Kenny A., 559 U.S. 542 (2010). The Court finds that applying the current rate is the appropriate method to account for the passage of time during the nine years that this case has been pending. Consequently, the Court will apply the current rate of $325 to all of Mr. Rosenberg's time.

The Court, however, will not apply a similar hourly rate to the time submitted by Mr. Ball and Ms. Jaquith. Rather, the Court concludes that hourly rates of $275 for Mr. Ball and $200 for Ms. Jaquith represent appropriate billing rates. Neither of these attorneys testified regarding extensive trial experience. Further, by Mr. Ball's own description, his time spent on this case was more or less on a discrete project basis. The same is true with respect to Ms. Jaquish's time. Her responsibilities in this case were limited to a short period surrounding the trial. Finally, the Court accepts the hourly rates for Mr. Ball and Mr. Bittner with respect to Mr. Ball's carry over time from the Schottenstein firm. Ohio State has not challenged the reasonableness of the hourly rates reflected in those invoices and the Court finds them reasonable.

### B. Hours Reasonably Expended

Beyond a reasonable hourly rate, the lodestar approach also requires the Court to determine "the reasonable number of hours expended." Hensley, 461 U.S. at 449. In doing so, the Court

must "exclude from this initial fee calculation hours that were not 'reasonably expended.'" Id. at 434. "Counsel for the prevailing party should make a good faith effort to exclude from the fee request hours that are excessive, redundant, or otherwise unnecessary...." Id. The Court is to consider "whether the lawyer used poor judgment in spending too many hours on some part of the case." Coulter v. State of Tenn., 805 F.2d 146, 151 (6th Cir. 1986), abrogated on other grounds by The Northeast Coalition for the Homeless v. Husted, 831 F.3d 686 (6th Cir. 2016).

In determining the reasonableness of hours expended by counsel, "[t]he question is not whether a party prevailed on a particular motion or whether in hindsight the time expenditure was strictly necessary to obtain the relief requested [but whether] a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." Wooldridge v. Marlene Industries Corp., 898 F.2d 1169, 1177 (6th Cir. 1990), abrogated on other grounds by Buckhannon Bd. & Care Home, Inc. v. W.Va. Dep't of Health & Human Res., 532 U.S. 598 (2001). "'Attorneys who seek fees have an obligation 'to maintain billing time records that are sufficiently detailed to enable courts to review the reasonableness of the hours expended' on the case, and the Court must be able to conclude that the party seeking the award has sufficiently documented its claim." Northeast Ohio Coalition for the Homeless v. Husted, 2014 WL 4829597, *3 (S.D. Ohio Sept. 29, 2014), affirmed in part, vacated in part, 831 F.3d 686 (6th Cir. 2016).

In its memorandum opposing Dr. Szeinbach's motion for fees (see Doc. 394), Ohio State clearly raises an issue about whether the work done by Mr. Rosenberg on matters unrelated to the co-worker retaliation claim is compensable. It argued, for example, that "the type and amount of legal work needed to prosecute the

co-worker retaliation claim is miniscule compared with the hours expended in support of unsuccessful claims by Plaintiff's counsel," Doc. 394, at 12. The Court recognized this as an issue in its Opinion and Order dated January 12, 2017 (Doc. 407, at 19), pointing to language in <u>The Northeast Coalition for the Homeless v. Husted</u>, 831 F.3d 686, 724 (6th Cir. 2016), to the effect that the moving party must "distinguish between time spent on successful and unsuccessful claims...."

At the hearing, only two witnesses testified on this issue. Mr. Rosenberg explained why it was that, had the case involved only the co-worker retaliation claim, he would have conducted the same discovery and called the same witnesses to testify (with some minor exceptions) and that he had removed from his final fee request any time spent exclusively on unsuccessful claims or positions. Mr. Gittes testified that, based on his expertise in employment litigation, it was reasonably necessary for Mr. Rosenberg to have spent the vast amount of the time reflected in his timesheets in pursuit of the co-worker retaliation claim because the evidence as to that claim and the direct retaliation claim were inextricably intertwined. He identified some areas where that was not the case, and Mr. Rosenberg deleted those areas from his final bill. Ohio State did not conduct any extensive cross-examination of either witness on these points, and did not ask either witness to justify this general testimony with respect to specific time entries on Mr. Rosenberg's billing records. Ohio State's expert witness, Mr. Fishel, gave no testimony and expressed no opinion on the issue.

In closing argument, counsel for Ohio State proffered, for the first time, a marked-up version of Plaintiff's Exhibit 8 (one of several versions of Mr. Rosenberg's billing records) which included counsel's comments, handwritten in the margins, about which of the time entries represented work done on unrelated or

unsuccessful claims.  Other comments critical of the time entries
appear on that document (Ohio State Exhibit 21) as well.  The
number of such marginal comments totals well in excess of 500.
Mr. Rosenberg was not provided with a copy of the document prior
to the proffer.

The Court expressed, in somewhat strong language, its view
of the unfairness of that tactic.  It noted that the comments
could not be considered as evidence but were apparently being
submitted as a written post-hearing brief (although counsel
described the document as a "demonstrative exhibit," albeit one
not identified or moved into evidence), even though the Court had
told the parties it would not entertain post-hearing briefing.
Further, it expressed concern that because Mr. Rosenberg had not
been alerted, prior to the hearing, of many of the specific
billing entries which Ohio State was challenging in the proffered
exhibit, he had no chance to present more specific testimony
about those entries, and had no reasonable opportunity to address
them as part of his closing argument.  Nevertheless, the Court
has considered the notations in the context of the manner in
which they were presented.

The Court begins its analysis of this issue with this
observation.  While the interrelated nature of legal claims is,
to some extent, a question of law - and, in this case, it seems
clear from a strictly legal viewpoint that the claim of direct
retaliation and co-worker retaliation are related in many ways -
the question of whether work which was reasonably necessary to
prove the co-worker retaliation claim included work also directed
to the other claim is a question of fact.  That is one reason why
district court decisions awarding attorneys' fees are reviewed
under an abuse-of-discretion standard.  <u>See, e.g., Imwalle v.
Reliance Medical Products, Inc.</u>, 515 F.3d 531, 551 (6th Cir.
2008)("We review a district court's award of attorney fees and

costs for an abuse of discretion. .... The trial court's exercise
of discretion is entitled to substantial deference because the
rationale for the award is predominately fact-driven")(internal
citations omitted).  The Court of Appeals has also established a
burden-shifting analysis for the district courts to apply, which
is explained this way in <u>Perotti v. Seiter</u>, 935 F.2d 761, 764
(6th Cir. 1991):

> Plaintiff has the burden of providing for the court's
> perusal a particularized billing record. ....  If the
> defendant asserts that a particular charge is related
> solely to work done on unsuccessful claims, the burden
> shifts to the defendant to demonstrate that the
> particular entry represents work done on unsuccessful
> claims. This burden can be met by evidence submitted
> at the hearing on the fee motion.

As noted, Ohio State did not submit evidence on this
question at the fee hearing, and it agrees that its proffered
exhibit addressing the issue is mere argument.  Consequently, the
Court, although it will, as it is obliged to do, review carefully
all of Mr. Rosenberg's billing entries, including the ones
highlighted by Ohio State as being work done on unrelated or
unsuccessful claims, it will disallow time entries only if it is
apparent from the content of the entry itself that the work both
was done in pursuit of an unrelated or unsuccessful claim, and
that it was not reasonably necessary to Dr. Szeinbach's success
on the co-worker retaliation claim.  In making this
determination, the Court is mindful of the fact that the
testimony at the hearing was that, with certain exceptions, all
of the work shown on those entries was reasonably performed in
pursuit of relief on the co-worker retaliation claim because of
the interrelated nature of the two claims which were tried, and
the substantial overlap in the evidence relating to each.  In
other words, unless a time entry itself is more likely to be an
accurate representation of the lack of interrelatedness of the

work than is the testimony of Mr. Rosenberg and Mr. Gittes to the contrary, the Court will not find, under the preponderance of the evidence standard, that the time reflected in that entry should be disallowed.

This task, however, was made unnecessarily difficult by the disordered manner in which the time records in this case were both maintained and ultimately presented to the Court. This disorder persisted from the initial fee petition's filing through the hearing. To be fair, at the hearing, it was clear that Mr. Rosenberg had made significant efforts to refine the time entries supporting the fee petition. Undoubtedly, he took Mr. Gittes' advice regarding revisions. To the extent that he did so, rather than simply submit redacted time sheets to allow direct comparison by the Court, Mr. Rosenberg prepared eleven spreadsheets (Exhibits 18-28) summarizing time entries and explaining his revisions. The Court fully believes that Mr. Rosenberg did so in an effort to painstakingly verify and justify every billing entry for which a fee award is requested. Unfortunately, the overall approach to the task of recording and compiling time in this case demonstrates that Mr. Rosenberg did not initially record his time with the desired end in mind – that end being the Court's review of a prevailing party's fee petition – and that made his task, and the Court's much more difficult.

All of the above is necessary to say that the Court is now required to consider a fee petition, in a case noteworthy for its length and procedural history, which is supported by unduly cumbersome documentation. Consequently, in an effort to achieve some level of efficiency, the Court will work within the conceptual confines of these eleven spreadsheets. However, the Court has neither the time nor the inclination to repeatedly cross-reference among multiple exhibits containing all the various iterations of billing records in this case to verify a

specific time entry's summarization. Nevertheless, the Court
will attempt to identify any specific time entry noncompensable
on its face to the extent it is obvious from the summary. This
approach requires a brief explanation of Dr. Szeinbach's method
of organization evidenced by the relevant spreadsheets.

Plaintiff's Exhibit 28 sets forth, by category, the total
billable hours for which fees are requested through May 31, 2017.
Exhibits 18 through 26 correspond to the individual categories
and summarize time entries from other exhibits in support. As
noted, post-trial time is reflected in other exhibits and the
spreadsheets refer to these exhibits as well. Time billed
between June 1, 2017 and June 11, 2017 appears to be subject to
its own separate exhibit, Exhibit 51. It is to these various
exhibits that the Court will now turn.

## Court Filings:  Exhibit 18

This exhibit, designated as court filings, contains a
summary of time entries relating to time spent drafting the
complaint and drafting and reviewing various motions for the time
period from August 12, 2008 through May 12, 2014. Dr. Szeinbach
seeks an award of fees for 824.80 hours of time in this category.
Of these hours, 808.75 hours are attributed to work undertaken by
Mr. Rosenberg and 16.05 hours are attributed to Mr. Ball's work.
This spreadsheet indicates that deductions were made for clerical
time and that various deductions were made on Mr. Gittes'
recommendation. There are also several additions based on
previously omitted time.

## Discovery:  Exhibit 19

This spreadsheet contains a summary of time entries relating
to time spent on discovery from January 1, 2006 thought May 7,
2014. Dr. Szeinbach seeks an award of fees for 206.60 hours of
time. All of this time relates to work undertaken by Mr.
Rosenberg. This exhibit reflects deductions for clerical time

and the addition of previously omitted time.

Depositions:  Exhibit 20

This exhibit contains a summary of entries for time spent relating to depositions between March 17, 2009 and April 30, 2014.  Dr. Szeinbach seeks a fee award for 564.45 hours of time in this category.  The Court notes that the time summaries include 8.5 hours of time relating to Carmeen Yarbrough.  Mr. Gittes testified that time relating to Ms. Yarbrough should have been deducted.  Mr. Rosenberg confirmed this.  Inadvertently, however, compensable time relating to Dr. Buerki was deducted instead.  The Court declined Mr. Rosenberg's suggestion to simply consider Ms. Yarbrough's time as a substitute for Dr. Buerki's.  Consequently, the Court will disallow the time in this category relating to Ms. Yarbrough.

This exhibit also contains deductions for clerical time and significant deductions based on Mr. Gittes' recommendations regarding time billed relating to Dr. Szeinbach's expert, Dr. Schondelmeyer.  There are also minimal additions for previously omitted time.

Exhibit 20 also identifies 3.3 hours of time attributed to Mr. Ball's work.  Mr. Ball's time, however, is described as "motion in limine projects."  This description does not appear strictly to relate to the category of depositions.  At the same time, there is nothing in the record suggesting that Mr. Ball did not expend this time.  With the deduction relating to Ms. Yarbrough, the time represented by this category totals 555.90 hours, with 3.3 hours attributed to Mr. Ball and 552.60 hours attributed to Mr. Rosenberg.

Research:  Exhibit 21

This exhibit contains a summary of time entries relating to research for the time period from August 4, 2008 through January 25, 2014.  Dr. Szeinbach seeks a fee award for 234.20 hours of

time in this category. The summary entries identify research relating to a number of issues, including spoliation, Title VII retaliation, misconduct, and admissibility issues. Other summary entries relate to time spent on document review and correspondence and memorandum drafting.

This spreadsheet also indicates certain reductions based on Mr. Gittes' recommendations and includes additions for previously omitted time. The Court notes that this category contains .25 hours for time relating to Dr. Schondelmeyer. Consistent with the stated intention that all time relating to this witness should be deducted, the Court will disallow this time entry. Of the remaining 233.95 hours in this category, 1.7 hours are attributed to Mr. Ball's research time and 232.25 hours are attributed to Mr. Rosenberg's time.

<u>Court Appearances: Exhibit 22</u>

This spreadsheet contains a summary of time entries relating to court appearances made from October, 2008 through April 25, 2014. The summary entries indicate appearances at status conferences, a mediation, and oral argument before the Court of Appeals. There are no time deductions indicated, but there are some instances of the addition of previously omitted time.

The first time summary describes a meeting with counsel for Ohio State and not a court appearance. Further, the time summaries also include preparation time. Dr. Szeinbach seeks a fee award for 100.8 hours in this category. Of this time .25 hours are attributed to Mr. Ball's work described as "status conference issues billed by Dave Ball" and the remaining 100.55 hours are attributed to Mr. Rosenberg's time.

<u>Communications: Exhibit 23</u>

These time summaries cover the period from August 8, 2008 through May 29, 2014. Most of the summary entries relate to communications between Mr. Rosenberg and Dr. Szeinbach. There

-18-

are minimal deductions but several additions of previously
omitted time.  Dr. Szeinbach seeks a fee award for 82.5 hours of
Mr. Rosenberg's time in this category.

<u>Trial Preparation: Exhibit 24</u>

These time summaries relate to the time period from January
27, 2014 through June 2, 2014.  There are some deductions as well
as some additions for previously omitted time.  Dr. Szeinbach
seeks fees for 697.25 hours of time in this category broken down
as follows: 79.5 hours for Ms. Jaquish's time, 4 hours for Mr.
Ball's, and the remaining time attributed to Mr. Rosenberg.
There is one hour of time designated to time involving Ms.
Yarbrough.  The Court will disallow this time, bringing the total
number of hours designated in this category to 696.25, with
612.75 of these hours attributed to Mr. Rosenberg's time.

A review of these time summaries indicates that there are
several instances where Mr. Rosenberg billed in a range from 9 to
15.5 hours on a particular day under this category.  Further,
there are several time summaries describing the work undertaken
as "[d]eveloped projects to be handled by Rosenberg & Ball
attorneys and/or independent contractors hired on a project basis
& assisted with same."

<u>Trial:  Exhibit 25</u>

This category suggests that it would include only the time
billed by counsel for representing Dr. Szeinbach over fourteen
days of trial in June, 2014.  Dr. Szeinbach seeks a fee award for
440.65 hours of time in this category broken down as follows:
238.25 hours attributed to Mr. Rosenberg's time, 155.9 hours
attributed to Ms. Jaquish's time, and 46.5 hours attributed to
Mr. Ball's time.  A quick cross-reference to the time sheets
indicates that not all of the time entries relate strictly to
time billed over the fourteen days of trial.

<u>Post-trial:  Exhibit 26</u>

This category includes Mr. Rosenberg's time beginning on June 25, 2014 relating to the interim fee petition and continuing through May 31, 2017. Dr. Szeinbach seeks attorney fees relating to 303.25 hours for this time period broken down as follows. For the time period ranging from June 25, 2014 through December 18, 2014, the summary entries indicate that Mr. Rosenberg spent 131.75 hours, including 16.75 hours on the interim fee petition, 100 hours on the memorandum contra Ohio State's motion for a new trial (this represents a reduction of 80 hours based on Mr. Gittes' recommendation) and 15 hours relating to the attorney fee petition. For the time period from October 5, 2016 through February 28, 2017, Mr. Rosenberg spent 42 hours preparing for the fee hearing as reflected in Exhibit 31. For the time period between March 1, 2017 and May 31, 2017, Mr. Rosenberg spent 129.5 hours preparing for the hearing as reflected in Exhibit 32.

<u>Fee Hearing: Exhibit 51</u>

As noted, this spreadsheet summarizes Mr. Rosenberg's billing records for the time period between June 1, 2017 and June 11, 2017; Mr. Ball's time entries between May 25, 2017 and June 11, 2017; and Tracy Turner's time entries from April 8, 2017 through June 11, 2017. According to this exhibit, Mr. Rosenberg billed for 95.25 hours of time at the rate of $350 per hour and Mr. Ball and Ms. Turner billed $2925 and $4958.50, respectively at the rate of $325 per hour. In addition to this time, Mr. Rosenberg agreed to be compensated for 12 hours of time per day spent at the fee hearing.

Certainly, based on all of the above, the Court has some concerns. The amount of time designated for trial preparation or the trial itself suggests Mr. Rosenberg began billing for trial preparation as early as January 27, 2014. By way of example, during one seven-day period in May, 2014, Mr. Rosenberg billed 71 hours for trial preparation. <u>See</u> Exhibit 24, pp. 10-15. While

the Court is mindful of both the nature of Mr. Rosenberg's
practice and the contrast he drew with the resources of Ohio
State, numerous time entries suggest a tendency to overwork
particular issues.  This tendency to overwork issues is evident
from the total hours of other specific categories as well.
Further, as Mr. Fishel noted, there are a few examples of "block
billing," which make it difficult for the Court to determine
exactly what Mr. Rosenberg was doing, and, therefore, whether he
spent a reasonable amount of time doing it.

Beyond this, the Court notes that the impact of Mr.
Rosenberg's less-than-precise record keeping cannot be
overstated.  His entire method of tracking his time led to his
creation of the spreadsheets themselves.  The time Mr. Rosenberg
devoted to their creation could not have been insignificant.  By
his own admission, he was revising these documents late into the
eve of the fee hearing.  As a result, Ohio State's counsel did
not obtain copies until the last minute.  As indicated, Mr.
Rosenberg's approach has made a meaningful line-by-line analysis
of the billing entries an impossibility.  Moreover, as the Court
observed above, despite Mr. Rosenberg's best efforts, errors and
irregularities continue to exist even in the most recent
iterations of the billing contained in the spreadsheets.  In
fact, given the state of the billing records as presented, the
Court would be well within its discretion in denying all the time
he spent preparing of the original and supplemental fee petitions
in this case.

For these reasons, the Court finds that only an across-the-
board reduction will adequately address the issues apparent here.
In determining the appropriate amount of such a reduction, the
Court will weigh not only the deficiencies set forth above, but
the testimony of both experts.

Mr. Gittes testified regarding the significant efforts he

undertook in preparing his opinion.  Some of the information he
reviewed included all of the substantive decisions of the trial
court and the Court of Appeals, the complete trial transcript,
the summary judgment briefing, the motions in limine, and select
deposition testimony.  Based on this review, Mr. Gittes testified
that, given the factual intensity of Dr. Szeinbach's claims, all
14 of her witnesses challenged by Ohio State were necessary.  In
his view, it would have been malpractice if Mr. Rosenberg did not
call certain of these witnesses.  He addressed with remarkable
specificity the need for testimony from particular witnesses.
For example, with respect to Drs. Roig and Dolnick, Mr. Gittes
testified that, although their testimony was excluded, they were
recognized experts on the issue of practices that seriously
deviate from those accepted within the relevant scholarly
community.  Further, he explained the necessity of all of
counsel's work directed to Dr. Lee and Dr. Elton as relevant to
the misconduct issues.  Beyond this, to the extent that Ohio
State raised the issue of "losing" claims, Mr. Gittes clarified
that these were not so much claims but factual issues about what
conduct constituted an adverse action.  Further, he explained
that he would have pursued a spoliation motion and instruction
based on the circumstances of the destruction and loss of records
and the failure of preservation efforts.  In short, Mr. Gittes
testified in impressive detail regarding the specific need for
Mr. Rosenberg's efforts on Dr. Szeinbach's behalf and opined that
a reasonable attorney would have believed the work for which fees
are being sought to be reasonably expended, despite the
particular outcome of any specific motion or position.

Mr. Fishel, on the other hand, testified that he did not
find it necessary to review significant portions of the record in
preparing his opinion.  He explained that, in concluding that the
time spent by counsel was clearly excessive, he considered the

issue from the perspective of what a client reasonably would expect to pay. While he identified some specific examples of time he considered to be excessive, including time spent on the memorandum contra Ohio State's motion for summary judgment, he declined to offer an opinion as to what a reasonable amount of expended time on that effort alone, or overall, would be.

Taking all of this into account, the Court concludes that a 20% reduction in Mr. Rosenberg's hours claimed through the end of 2014 is appropriate and reasonable. In the Court's view, this percentage reduction adequately addresses the concerns raised by Mr. Fishel; the state of the billing records themselves; and the Court's view that there is a notable difference between Mr. Rosenberg's view of how much time should be spent on particular tasks and the Court's view of what is reasonable. This is not to say that Mr. Rosenberg intentionally overworked various tasks, but that the Court is not persuaded that he worked as efficiently as the hypothetical "reasonable attorney" would have done under the same circumstances.

Given the significant reductions which Mr. Rosenberg has already made to his billing entries, about which both he and Mr. Gittes testified, the Court does not believe any higher percentage reduction is warranted. At the same time, the Court finds that a deduction of only 20%, given both the testimony and the state of the billing records, adequately recognizes the significance of Mr. Rosenberg's effort through the culmination of the trial phase of the case.

The Court sees no reason to make a similar across-the-board reduction for either Mr. Ball's or Ms. Jaquish's time. Even though the Court noted some irregularities with respect to the categorization of Mr. Ball's time in the exhibits, there is nothing in the record to suggest that he did not expend this time or that it was unreasonable given the nature of the litigation.

Further, the efforts of these attorneys were devoted to discrete projects and their billable time is small in comparison to the overall time expended in this case.

The Court will award the following rates and hours to calculate the lodestar, broken down by the categories identified in Dr. Szeinbach's Exhibit 28:

| | Hours Requested | Hours Awarded | Rate | Amount |
|---|---|---|---|---|
| **Court filings** | | | | |
| Mr. Rosenberg | 808.75 | 647 | $325 | $210,275.00 |
| Mr. Ball | 16.05 | 16.05 | $275 | $4413.75 |
| | | | | Sub-total: $214,688.75 |
| **Discovery** | | | | |
| Mr. Rosenberg | 206.60 | 165.28 | $325 | $53,716 |
| | | | | Sub-total: $53,716 |
| **Depositions** | | | | |
| Mr. Rosenberg | 552.60 | 442.08 | $325 | $143,676.00 |
| Mr. Ball | 3.30 | 3.30 | $275 | $907.50 |
| | | | | Sub-total: 144,583.50 |
| **Research** | | | | |
| Mr. Rosenberg | 232.25 | 185.80 | $325 | $60,385.00 |
| Mr. Ball | 1.70 | 1.70 | $275 | $467.50 |
| | | | | Sub-total: $60,852.50 |
| **Court Appearances** | | | | |
| Mr. Rosenberg | 100.55 | 80.44 | $325 | $26,143.00 |
| Mr. Ball | .25 | .25 | $275 | $68.75 |
| | | | | Sub-total: $26,211.75 |
| **Communications** | | | | |
| Mr. Rosenberg | 82.5 | 66 | $325 | $21,450.00 |
| | | | | Sub-total: $21,450.00 |
| **Trial Preparation** | | | | |
| Mr. Rosenberg | 612.75 | 490.2 | $325 | $159,315.00 |
| Mr. Ball | 4 | 4 | $275 | $1100.00 |
| Ms. Jaquith | 79.50 | 79.50 | $200 | $15,900.00 |
| | | | | Sub-total: $176,315.00 |
| **Trial** | | | | |
| Mr. Rosenberg | 238.25 | 190.60 | $325 | $61,945.00 |
| Ms. Jaquish | 155.9 | 155.9 | $200 | $31,180.00 |
| Mr. Ball | 46.5 | 46.5 | $275 | $12,787.50 |
| | | | | Sub-total: $105,912.50 |
| **Post-trial through December 18, 2014** | | | | |
| Mr. Rosenberg | 131.75 | 105.40 | $325 | $34,255.00 |
| | | | | Sub-total: $34,255.00 |

This brings the Court to the post-trial time from October 5, 2016 through June 11, 2017. The Court finds an across-the-board 30% reduction of Mr. Rosenberg's time to be necessary based on its personal knowledge and observation of the conduct of this litigation since the reassignment of this case in March, 2015 through the conclusion of the fee hearing on June 13, 2017. This observation was provided through the briefing on the original and supplemental attorneys' fees petitions, conferences held in preparation for the fee hearing, and the fee hearing itself.

Throughout these events, the Court personally witnessed examples of inefficiency, overworking and preparedness issues. One example that stands out to the Court (beyond the spreadsheet creation) is that Mr. Rosenberg subpoenaed attorneys from the Taft law firm to appear and testify at the fee hearing as to the hours they billed in this case as reflected in Plaintiff's Exhibit 1. Not surprisingly, this issue was ultimately addressed through stipulation. But that did not occur without some filing of motions and the attendance of Taft's managing partner at the opening of the hearing. This was wholly unnecessary. The Court does not view Mr. Rosenberg's efforts in this regard as ill-motivated, but does consider them to be an indication of an overall tendency to lose sight of practicality.

As to the other justifications for a 30% reduction, Mr. Rosenberg conceded that both his original and supplemental fee petitions were inaccurate - in some cases, significantly so. It also appears to the Court that Mr. Rosenberg was not able, without substantial help from Mr. Gittes, to make the types of judgment calls and refinement of raw hours expended that is required by the case law. Further, it can legitimately be asked why Ohio State should be required to pay for work needed to bring Mr. Rosenberg's time records into a state that they should have been in to begin with. Perhaps even a 30% reduction is being

-25-

generous to Mr. Rosenberg, but it represents the Court's effort to reach a number that is fair to both sides, recognizing that Ohio State was not completely blameless in making the fee litigation more complicated than it needed to be.

Consequently, the Court will award the following amounts for this portion of time:

| Post-trial time from October 5, 2016 through February 28, 2017 | | | |
|---|---|---|---|
| | Hours Requested | Hours Awarded | Rate | Amount |
| Mr. Rosenberg | 42 | 29.4 | $325 | $9,555.00 |
| | | | | Sub-total: $9,555.00 |

| Post-trial time from March 1, 2017 through May 31, 2017 | | | |
|---|---|---|---|
| Mr. Rosenberg | 129.5 | 90.7 | $325 | $29,461.25 |
| | | | | Sub-total: $29,461.25 |

| Post-trial time from June 1 through June 11, 2017 | | | |
|---|---|---|---|
| Mr. Rosenberg | 95.25 | 66.67 | $325 | $21,667.75 |
| | | | | Sub-total: $21,667.75 |

Beyond the above time, Tracy Turner entered an appearance in advance of the fee hearing and conducted the direct examination of Mr. Rosenberg. Exhibit 51 contains her invoice. This invoice indicates that she billed the amount of $4,958.50 for the time period between April 8, 2017 and June 11, 2017, at the rate of $325.00 an hour. Although evidence directed to Ms. Turner's education and relevant experience was not presented at the hearing, Ohio State has not challenged Ms. Turner's proposed billing rate. The Court has no other information from which it could conclude that she should not command this hourly rate. Consequently, the Court will approve her hourly rate, and her hours, as submitted.

Exhibit 51 also includes an invoice for Mr. Ball's time for the time period from May 25, 2017 through June 11, 2017. According to this invoice, Mr. Ball billed 9 hours at the rate of $325.00 per hour. Consistent with the rate awarded for Mr. Ball's previous time entries, the Court will award an hourly rate of $275.00 per hour for this time.

| Additional Time | | | |
|---|---|---|---|
| Ms. Turner | 15.25 | 15.25 | $325 | $4958.50 |

-26-

| | | | | |
|---|---|---|---|---|
| Mr. Ball | 9 | 9 | $275 | $2475.00 |
| Mr. Rosenberg | 24 | 24 | | $7800.00 |
| | | | | Sub-total: $52,891.53 |

The final amount of time for which the Court has approved an award of fees is the carry over time from Schottenstein, Zox & Dunn.

Schottenstein, Zox & Dunn

Sub-total:  $37,658.03

Based on all of the above, the total amount of attorneys' fees approved by the Court can be summarized as follows:

Attorneys' Fees Summary

| | |
|---|---|
| Court Filings | $214,688.75 |
| Discovery | $ 53,716.00 |
| Depositions | $144,583.50 |
| Research | $ 60,852.50 |
| Court Appearances | $ 26,211.75 |
| Communications | $ 21,450.00 |
| Trial Preparation | $176,315.00 |
| Trial | $105,912.50 |
| Post-Trial through 12/18/2014 | $ 34,255.00 |
| Post-Trial through 2/28/2017 | $  9,555.00 |
| Post-Trial through 5/31/2017 | $ 29,461.25 |
| Post-Trial through 6/11/2017 | $ 21,667.75 |
| Additional Time | $ 15,233.50 |
| SZ&D Time | $ 37,658.03 |
| Total | $951,560.53 |

Finally, Mr. Rosenberg agreed to a 40-hour reduction for time relating to the backpay issue following the Court of Appeals' ruling.  This results in a reduction of $13,000 to the

above total of $951,560.53.  For this reason, the lodestar is calculated at $938,560.53.

## C.  <u>Degree of Success</u>

The lodestar calculation does not end the Court's inquiry. <u>Hensley</u>, 461 U.S. at 464.  The lodestar amount may be adjusted, either up or down, based on a number of factors.  Here, Mr. Rosenberg agreed to forego a multiplier if the Court awarded an hourly rate in excess of the amount at which he actually billed. Because the Court has done so, it will not consider an upward modification to the lodestar amount.

"When analyzing the degree of success in the context of a lawsuit where it is 'difficult to divide the hours expended on a claim-by-claim basis....the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.'" <u>Hines v. DeWitt</u>, 2016 WL 2342014 (S.D. Ohio May 4, 2016), quoting <u>Hensley</u>, at 435.

With respect to this first question, as already explained, Mr. Gittes provided detailed testimony regarding the interrelatedness of Dr. Szeinbach's claims.  Ohio State failed to present any meaningful evidence to the contrary.  For these reasons, the Court easily concludes that the claims on which Dr. Szeinbach failed to prevail are related to the co-worker retaliation claim on which she succeeded.

Further, the Court concludes that the overall level of success achieved here is justifiably characterized as significant.  Mr. Gittes testified in some detail about the formidable challenges inherent in this and similar cases.  As even a brief review of the Court's record highlights, this was a hard fought case on both sides.

The decision to pursue this case after summary judgment was granted in Ohio State's favor led to a favorable Court of

Appeals' decision and ultimately a damages award at trial.
Although her backpay award was reduced, Dr. Szeinbach obtained an
award of $300,000. That is a significant degree of success in a
difficult case. As the Court previously concluded, this result,
taking into consideration the attorneys' fees issue, exceeded
Ohio State's offer of judgment. All of these factors support the
conclusion that there is no reasonable basis for a downward
adjustment to the lodestar amount.

## II. Costs
### A. Legal Standard

Fed.R.Civ.P. 54(d) allows a court to award costs to a
prevailing party. Crawford Fitting Co. v. J.T. Gibbons, Inc.,
482 U.S. 437, 441 (1987). In Title VII cases, a court may award
a prevailing plaintiff costs under both 2000e-5(k) and 28 U.S.C.
1920. Lensing v. Potter, 2015 WL 10892073, *10 (W.D. Mich. Aug.
20, 2015). Courts view the award of attorney fees under §2000e-
5(k) as including reasonable out-of-pocket expenses that an
attorney would normally charge to a fee-paying client. Id. 28
U.S.C. §1920 authorizes an award of costs for clerk and marshal
fees, transcript fees, printing and copying costs, witness fees,
and docketing fees under §1923. "Although costs are presumed
taxable, the prevailing party must nevertheless demonstrate that
the costs (1) are authorized by federal law, (2) are reasonable,
and (3) were necessary to the prosecution of the case." Id., at
*11, citing Berryman v. Hofbauer, 161 F.R.D. 341, 344 (E.D. Mich.
1995).

As the Court explained in Lensing:

> The Sixth Circuit Court of Appeals has held that
> Rule 54(d) creates a presumption in favor of awarding
> costs and that the district court exercises discretion
> in denying costs. Knology, Inc. V. Insight Commc'ns
> Co., L.P., 460 F.3d 722, 726 (6th Cir. 2006). That
> presumption, however, will not sustain an award of
> costs in the absence of a showing that the cost was

reasonably necessary. <u>Jones v. Unisys Corp.</u>, 54 F.3d
624, 633 (10th Cir. 1995)(finding that the district
court did not abuse its discretion in denying costs for
copying that were not reasonably necessary, in spite of
the presumption favoring an award of statutorily
authorized costs).

    Once entitlement to the award is established, to
overcome the presumption that the prevailing party is
entitled to taxable costs, the objecting party bears
the burden of showing that the cost was either
unnecessary or unreasonable. <u>See</u> <u>id</u>. at 296; <u>BDT</u>
<u>Prods., Inc. v. Lexmark Int'l, Inc.</u>, 405 F.3d 415, 419-
420 (6th Cir. 2005) abrogated on other grounds by
<u>Taniguchi</u>, 132 S.Ct. 1997. Because the award of costs
is limited to those enumerated by the statute, "there
is a presumption that those costs not expressly
authorized by 1920 are precluded." <u>Segovia v.</u>
<u>Montgomery Cnty, Tennessee</u>, 593 Fed.Appx. 488, 493 (6th
Cir. 2014)(involving a request for costs under §1988
for expenses recoverable only under §1920). The Court
proceeds with these two presumptions in mind.
Generally, if the requested cost falls within one of
the enumerated categories in §1920, and the
reasonableness and necessity of the cost is relatively
obvious, the burden falls on [the opposing party] to
show why the costs was not reasonable or necessary.
<u>See</u> <u>Farella v Hockaday</u>, 304 F.Supp.2d 1076, 1082 (C.D.
Ill. 2004)(holding, that where the purpose, nature, and
amount of each expense is obvious, counsel's conclusory
affidavit stating that each charge was reasonable and
necessary was sufficient to establish entitlement to
award). However, where the requested cost must be
awarded under §2000e-5(k), because it does not fall
under §1920, [the prevailing plaintiff] must establish
with evidence both the reasonableness and necessity of
the requested costs.

<u>Id</u>., at *11.

## B. <u>Requested Costs</u>

    Dr. Szeinbach requests an award of costs in the amount of

$164,836.08. This amount is set forth in Exhibit 27. Consistent

with the exhibits relating to time entries, this Exhibit is a

compilation of the cost entries contained in counsel's billing

records with a cross-reference to specific pages of those

records.

Mr. Rosenberg testified that all costs being sought in the fee petition were necessary and were incurred in the litigation of Dr. Szeinbach's case. Ohio State does not address the costs as set forth on Exhibit 27 but did address, only through argument, the numerous cost entries in Exhibit 8. Ohio State's primary objections to the cost entries are that they relate to unsuccessful claims or are vague.

An initial problem that is immediately apparent from Exhibit 27 is that Dr. Szeinbach seeks recovery for the fees relating to time spent by Mr. Bittner and Mr. Ball at the Schottenstein firm as costs. As explained above, this time was considered in the lodestar calculation and is not a recoverable cost.

An additional problem is that the requested cost amounts are plagued by the same record keeping issues as the time entries. The submissions require cross-referencing among various exhibits both to allow the Court to address Ohio State's concerns to the extent appropriate and to make its own reasonableness analysis. Again, the difficulty created by this manner of presentation cannot be overstated. Nevertheless, Court will make its best effort to do a reasonableness analysis. To be clear, the Court will use Exhibit 27 as the most currently available representation of the costs for which Dr. Szeinbach is seeking an award.

In Exhibit 27, the cost entries appear to be presented chronologically. The entries can be categorized as follows: filing fees; photocopies (both commercially and in-house); court reporters/transcripts; parking; food; subpoenas; postage; expert witness fees (Dr. Roig, Dr. Dolnick and Mr. Gittes); PACER charges; witness fees; process server fees; and trial exhibits and supplies. In this exhibit, Dr. Szeinbach also notes certain items not billed and the location of the receipt for an expense

or the lack of a receipt.  The cost calculation also appears to include interest at the rate of 4%.

As the Court reads Exhibit 27, excluding the line item for attorney fees and the interest calculations, Dr. Szeinbach includes 134 line item charges for which she is seeking compensation as costs.  These line items total, without interest, $99,059.83.  To the extent that these line items relate to costs for food, Dr. Szeinbach notes a $1,000 deduction.  <u>See</u> Exhibit 27, p. 10, line 161.  This brings the total award for costs she is seeking, exclusive of interest, to $98,059.83.  The Court will address each category of fees as designated by Ms. Szeibach.

<u>Transcript Fees</u>

Exhibit 27 contains 52 line items designated as either "Court reporter and/or deposition transcript" or "Transcript Expense" for which Dr. Szeinbach is seeking an award of costs.  <u>See</u> Exhibit 27.  By way of example, lines 17 and 18 of Exhibit 27 identify expenses in the amount of $586.22 and $622.00, respectively, both with a cross-reference to Exhibit 8.  A review of Exhibit 8 indicates that these costs were incurred on April 23, 2009 and represent costs for a portion "of Spectrum invoice for Massaro deposition transcript and a portion "of Spectrum invoice for Raj deposition."  Most entries are similar in nature with respect to the many witnesses in this case.  A quick cross-referencing of the exhibits, however, indicates some inconsistencies in the billing records.  For example, there are several charges related to "Raj's" deposition and only some of the invoices appear to have been billed to Dr. Szeinbach (<u>see</u>, <u>e.g.</u>, Ex. 27, p. 9, line 148).  Further, another expense identified as a transcript expense (<u>see</u> Exhibit 27, p. 10, line 153) is actually an amount for Dr. Seoane's travel expenses to and from Boston and hotel accommodations for five unnamed witnesses.  Additionally, there is some suggestion of potential

duplicate billing for certain deposition charges (see Exhibit 27, p. 10, line 48).  All 52 line items as claimed by Dr. Szeinbach total $35,640.33.

An award of "fees for printed or electronically recorded transcripts necessarily obtained for use in the case" is authorized under §1920.  "Necessity is determined as of the time of the taking, and the fact that a deposition is not actually used at trial is not controlling."  Sales v. Marshall, 873 F.2d 115, 120 (6th Cir. 1989).

The number of line items, comprising a sizeable amount of the costs sought to be awarded, is not unexpected given the well-documented factual intensity of this case.  Mr. Gittes' extensive review of the record supported his conclusion that all of the witnesses challenged by Ohio State were necessary to the prosecution of this case.  Mr. Rosenberg provided similar testimony.  Ohio State did not present any evidence to the contrary.  However, as explained above, the Court has noted some irregularities and potential duplicate billing.  Consequently, while the Court is satisfied that most of the entries for transcript and court reporter fees were necessarily obtained for use in this case, a reduction in the amount requested is required.  Consequently, the Court finds the appropriate amount of reasonable and necessary costs to be $30,399.95 and the Court will award that amount.

### Copying Fees

Exhibit 27 includes ten line items relating to costs for photocopies, including line 160 which identifies $11,042.80 for in-house copying costs at ten cents per page.  The documentation relating to these items is remarkably inadequate for such a basic cost.  Some of these items are identified as "Deposition photocopies and/or parking."  See, e.g., Exhibit 27, p. 2, lines 30-33.  Taking line 33 as an example, this line indicates that

costs of $13.73 were incurred on June 23, 2009.  This line further indicates that this charge was documented on both Mr. Rosenberg's billing records - Exhibit 8, page 23 - and the receipts - Exhibit 29, pp. 39-41.  The amount reflected in Exhibit 8 is $11.44 for parking fees and photocopy charges and Exhibit 29 contains an indecipherable receipt making it impossible for the Court to attempt to reconstruct Mr. Rosenberg's math.  Further, the entry relating to the in-house copying costs literally states "hand written record kept on post-it notes - with cumulative total carried forward."

Costs for copies may be awarded under §1920(3) or (4). Costs are generally recoverable when the costs are incurred for documents prepared for the court or the opposing party.  Lensing v. Potter, 2015 WL 10892073, *18 (W.D. Mich. Aug. 20, 2015). Copy costs for the convenience of counsel are generally not recoverable.  Id.  The Court of Appeals has instructed that courts should not simply "rubber stamp" a party's photocopying expenses without examining them for reasonableness.  Huntsville Golf Development, Inc. v. Brindley Const. Co., 2011 WL 4960421, *5 (M.D. Tenn. Oct. 18, 2011).  Such costs are subject to greater scrutiny than other costs.  Id. The court may reduce the number of copies to account for copies obtained for the convenience of counsel when there are non-itemized requests.  Id.

As explained above, the Court is without any meaningful information from which it could determine how many copies may have been made for convenience of counsel as opposed to for the court and opposing party.  At the same time, the record in this case easily supports the conclusion that Dr. Szeinbach incurred a significant amount of copying costs.  The Court simply cannot determine a precise amount based on the documentation before it. Consequently, it will discount the requested amount of in-house copying fees by 50% and award Dr. Szeinbach $5,521.40 in costs

for photocopies.  The Court will not make a cost award for relating to the commercial photocopies because of the inadequate documentation.

## Filing Fees

Exhibit 27 denotes costs of $350 and $405 representing the initial filing fee for this case incurred in 2008  and for the first appeal in 2011.  These combined amounts total $755.00.  These fees are recoverable under §1920 and will be allowed.

## Parking Fees

Thirty-nine entries on Exhibit 27 make some reference to parking expenses.  Some of them delineate a specific parking fee.  Others denote a parking fee within a block notation relating to costs for food or other expenses.  As noted, Dr. Szeinbach has taken a lump sum deduction for food expenses.  Several of the entries on Exhibit 27 are unaccompanied by a receipt.  This makes it difficult for the Court to determine accurately the total amount of parking fees Dr. Szeinbach seeks to recover through her cost award.  The isolated entries reflecting parking charges suggest a range from $3.00 to $9.00.

Certainly, courts have awarded costs for parking fees under §2000e-5(k) as expenses ordinarily billed to a paying client.  Lensing, 2015 WL 10892073, at *19.  Under this circumstance, the Court will allow a recovery of $6.00 for each instance of parking for a total of $234.00.

## Process Servers, Witness Fees, and Subpoenas

There are multiple entries relating to subpoenas, witness fees and subpoenas contained in Exhibit 27.  This category required some cross-referencing to other exhibits to even begin to understand the billing entries.  Based on this cross-referencing, these entries appear to include the following: $100 - subpoenas for Adam Uhas on August 7, 2009 and January 25, 2010; $125.00 -  subpoena for Dr. Lee on March 26, 2010; $40.00 -

witness fees for Dr. McCamey on April 15, 2014; $165.00 - process server expense for Dr. McCamey on April 28, 2014; $850.00 - witness fee expense for Dr. McCamey on April 29, 2014; $365.44 - witness fees for Ohio State witnesses  broken down as follows -

$59.04  Jennifer Moseley;
$97.12  Robert Buerki;
$53.44  John Fowble;
$47.84  Anne Massaro;
$59.04  Melap Nahata;
$48.96  Priscilla Hapner.

See Exhibit 29, pages 124-129; $226.34 - witness fees for Ohio State adverse witnesses on May 11, 2014, broken down as follows -

$59.04 Olga Gonzales;
$47.84 Carole Anderson;
$54.46 Charles Brooks;
$65.00 Carmen Yarbrough.

See Exhibit 29 pp. 131-134; $798.70 - process server fees for out of state Ohio State witnesses on May 31, 2014, broken down as follows -

Matthew Platz;
Dale Vandre;
William Hayton;
Robert McGrath;
Joseph Dasta.

See Exhibit 29 pp. 135-141; $690.00 - process service fees on May 29, 2014, broken down as follows -

$65.00 Charles Brooks;
$65.00 Anne Massaro;
$65.00 Carole Anderson;
$65.00 Priscilla Hapner;
$65.00 Jennifer Mosley;
$65.00 Milap Nahata;
$65.00 Carmeen Yarbrough;
$65.00 Olga Esquivel-Gonzalez;
$105.00 Robert Buerki;
$65.00 John Fowble.

See Exhibit 29, pp. 147-149; $668.78 - airfare and trial expenses for lay witness Jessie Au, as broken down in Exhibit 29, p. 200

There is an additional process server expense appearing in
Exhibit 27 at line 152 in the amount of $805.70 with a cross-
reference to Exhibit 29, pp. 191-197, as the location of the
corresponding receipt.  The receipts, however, are court reporter
invoices for what appear to be daily trial transcripts of select
witness testimony.  This amount will not be considered within
this category.  The Court also notes that its review of the
invoices relating to the process server fees for the out-of-state
Ohio State witnesses do not reflect strictly service of process
fees.  Rather, additional fees are reflected in the $798.70
total, including witness fees and subpoena fees.  Based on the
state of the record-keeping in this case, the Court will not
consider these other fees.

The Court of Appeals has authorized service of process fees
under §1920(1) for private process servers, but only up to the
amount the United States Marshal would have charged.  Lensing,
2015 WL 10892073, at *17, citing Arrambide v. Wal-Mart Stores,
Inc., 33 Fed.Appx. 199, 203 (6th Cir. 2002).  In 2014, the
Marshals Service charged $65 per hour for each item served plus
travel costs.  Consequently, the Court will award $650.00 for the
service of process fees on May 29, 2014 and $325.00 for the
service of process fees on May 31, 2014, and $65.00 for service
on Dr. McCamey for a total award of $1,040.00 for service of
process fees.

Further, 1920(3) authorizes a court to award witness fees.
"'The witness fee identified in 1930(3) is defined in 28 U.S.C.
1821.'" Lensing, at *15, quoting Crawford Fitting, 482 U.S. at
440-41.  "Section 1821(a)(1) requires a witness who attends court
or a deposition scheduled under a rule or by order of the court
to be paid fees." Id.  "Subsection (b) authorizes a witness fee
of $40 per day of attendance, in addition to mileage." Id.

With respect all witness fees with the exception of Dr.

McCamey and Jessie Au, the receipts indicate a flat fee payment and do not itemize between witness fees and mileage or subsistence fees. The requested amounts, however, do not seem out of line with the inclusion of mileage or subsistence fees above the witness fees. Moreover, Ohio State has not challenged these requested costs on this basis. Consequently, the Court will award costs in the amount of $591.78 for witness fees relating to the witnesses other than Dr. McCamey and Jessie Au.

There are two requests for witness fees relating to Dr. McCamey – the standard $40.00 witness fee and what appears to be a professional deposition service fee in the amount of $850.00. There was no testimony at the fee hearing indicating that Dr. McCamey's role in the litigation was as an expert witness retained by Ms. Szeinbach. Consequently, the $850.00 witness fee request will be denied. See Lensing, at *16 (denying professional service fees for individuals not retained as expert witnesses). However, the Court sees no reason to decline to award costs for the statutory witness fee of $40.00 for Dr. McCamey.

This brings the Court to Dr. Szeinbach's lay witness, Jessie Au. Dr. Szeinbach seeks costs for airfare, mileage to and from the airport and meals for one day at the per diem rate for Columbus. Dr. Szeinbach represents the relevant per diem to have been $56.00 per day. Receipts for Ms. Au's travel expenses are contained in Exhibit 29 at pages 199-202. Ohio State did not contest this per diem rate.

Available witness expenses in addition to attendance include travel and subsistence fees as set forth in 28 U.S.C. §1821. Lensing, at *15, quoting L&W Supply Corp. v. Acuity, 475 F.3d 737, 738 (6th Cir. 2007). Under that statute, "[a] witness who travels by common carrier shall be paid for the actual expenses of travel on the basis of the means of transportation reasonably

-38-

utilized and the distance necessarily traveled to and from such witness's residence.... A receipt or other evidence of actual cost shall be furnished." Consequently, the Court will costs in the amount of $668.78 for this witness' travel costs.

The Court recognizes, as explained above, that Dr. Szeinbach seeks a cost award for similar witness fees for Dr. Seoane's travel expenses to and from Boston and for five unnamed witnesses' hotel accommodations. There is no supporting documentation for these expenses other than a handwritten invoice noting a lump sum payment. This documentation is insufficient to support a cost award for these expenses.

Ms. Szeinbach has provided no documentation to support the requested costs for subpoenas issued to Mr. Uhas or Dr. Lee. Consequently, the Court will not award costs relating to these subpoenas.

PACER Fees

Exhibit 27 contains seven entries for PACER charges identified simply as "PACER expense[s]." These entries total $70 and range in date from November 27, 2012 through June 15, 2014. The entries the Court cross-referenced on Exhibit 8 simply indicate a PACER charge without any identification as to the nature of or reason for the charge. Ohio State objects to some of these charges on vagueness grounds. As noted, however, Mr. Rosenberg testified that all costs were reasonable and necessary to the litigation. Consequently, the Court will award costs for PACER charges in the amount of $70.00.

Fee Expert Fred Gittes

Exhibit 27 sets forth expert witness for Mr. Gittes at $37,475.65. Mr. Gittes testified at the hearing that through June 8, 2017, his fee was $40,858.75. This is consistent with the invoices Dr. Szeinbach has included in Exhibit 32 for Mr. Gittes' time November 11, 2016 through June 8, 2017. "Section

2000e-5(k) permits a court to award the prevailing party in a Title VII action 'a reasonable attorney's fees (including expert fees).' A plain reading of the statute confirms that expert fees are included within, or a subset of, attorney's fees." <u>Howe v. City of Akron</u>, 2016 WL 916701, *22 (N.D. Ohio March 10, 2016), quoting <u>E.E.O.C. v. Peoplemark, Inc.</u>, 732 F.3d 584, 592 (6th Cir. 2013). In <u>Peoplemark</u>, the Court of Appeals explained that "[t]he benchmark for awarding expert fees under the statute is reasonableness." <u>Id</u>. at 594. Further, the party requesting expert fees and costs must come forward with sufficient documentation to enable the court to test the reasonableness of the request.

The Court has no difficulty determining the reasonableness of this expert witness fee expense. As noted throughout this opinion, Mr. Gittes spent extensive time in preparation of his report and his hearing testimony. As documented, his efforts resulted in significant reductions to time entries for which Dr. Szeinbach ultimately seeks a fee award. Consequently, the Court will award costs for expert witness fees in the amount of $40,858.75.

Experts Roig and Dolnick

Exhibit 27 sets forth costs for what appear to be the professional service fees of Drs. Dolnick and Roig. These entries are identified as "Roig Retainer" in the amount of $500.00; "Roig invoice" in the amount of $1000; "Dolnick invoice" for $2625.00; and "Dolnick invoice" for $1500. Contrary to what would be expected relating to professional services, there are no invoices or receipts for these charges except with respect to the Roig retainer. This receipt, found on page 30 of Exhibit 29, indicates a payment made on May 19, 2009, in the amount of $1020 and allocated between Dr. Szeinbach and Dr. Seoane. However, the Court recognizes that there can be no

question that these individuals were experts retained by Dr. Szeinbach. The motions practice in this case and the testimony at the fee hearing clearly support such a conclusion. Ohio State does not suggest otherwise. As explained, fees for expert witnesses may be awarded to a prevailing Title VII plaintiff under 42 U.S.C. §2000e-5(k). Consequently, the Court will award these costs in the amount of $5625.00.

Postage

Exhibit 27 includes five entries totaling $111.66 designated as postage costs. This includes the amount of $91.39 on February 8, 2010. There are no receipts relating to any of these postage entries. Exhibit 8, the billing records, indicates that the $91.39 amount represents a Federal Express overnight charge pertaining to the McGrath deposition exhibits. Courts have awarded costs related to postage fees. See Schumacher v. AK Steel Corp. Ret. Acc. Pension Plan, 995 F.Supp.2d 835 (S.D. Ohio 2014). Federal Express charges are not necessarily routinely awarded as costs. See, e.g., Choike v. Slippery Rock University of Pennsylvanie of the State System of Higher Educ., 2007 WL 3120097) (W.D. Pa. Oct. 22, 2007)(finding unreasonable request for cost of overnight federal express necessitated by location of plaintiffs' counsel). Because the charges in this category are not well-documented and the Court has no basis upon which to evaluate the necessity for the Federal Express charge, the Court will deny the request for an award of these costs.

Trial Exhibit and Supplies

Exhibit 27 identifies three line items relating to costs for trial exhibit supplies and expenses. These line items reflect the following amounts: $236.04 from May 26 - 30, 2014; $952.25 from May 31, 2014 - June 2, 2014; and $42.33 for June 7, 2014. The receipts pertaining to these items contained in Exhibit 29 indicate that these charges are for copies and other supplies

representing "'incidental and necessary expenses incurred in furnishing effective and competent representation.'" <u>Lankford v. Reladyne, LLC</u>, 2016 WL 3640691 (S.D. Ohio June 29, 2016)(awarding costs for similar items).  Consequently, the Court will award costs for these items in the amount of $1230.62.

Attorney Fee Hearing Costs

Exhibit 27 contains a single line item relating to a lump sum amount of $1220.30 for "photocopy, subpoena, process server, and other expenses related to Attorney Fee Hearing."  This entry cites to Exhibit 32, pages 17 - 28.  The Court has reviewed the designated pages of Exhibit 32 and it is not obvious to the Court how the requested amount was calculated.  Adding the amounts on these combined pages does not yield the requested amount. Further, there are items reflected in the receipts for which an award of costs would not be made under either §1920 or as a cost typically billed to a paying client.  On the other hand, some expenses appear to be fairly categorized as incidental and necessary expense of the type approved relating to the trial. Without belaboring the issue, the Court's review of these receipts indicates that an award of costs in the amount of $490.00 is reasonable and appropriate for expenses related to the fee hearing.

Based on all of the above, the cost award approved by the Court can be summarized as follows:

Costs Summary

| Transcripts | $30,399.95 |
| --- | --- |
| Copying | $ 5,521.40 |
| Filing | $   755.00 |
| Parking | $   234.00 |
| Process Servers, Witnesses & Subpoenas | $ 2,340.56 |

| PACER | $      70.00 |
| --- | --- |
| Fee Expert Fred Gittes | $40,858.75 |
| Experts Roig & Dolnick | $ 5,625.00 |
| Postage | $0 |
| Trial Exhibits & Supplies | $ 1,230.62 |
| Attorney Fee Hearing | $     490.00 |
| Total | $87,525.28 |

### Additional Issues

Ohio State raised two separate issues in its closing argument which appear to sound in judicial estoppel. First, it contended that at a status conference conducted on February 21, 2014, Mr. Rosenberg represented that he would be seeking fees only at the rate at which he billed Dr. Szeinbach. That argument was based on statements made at pages 59-61 of the transcript (Doc. 236) where Mr. Rosenberg, in discussing a document request for the bills he sent to Dr. Szeinbach, said that he had no obligation to produce the actual bills. Magistrate Judge Abel agreed, but also commented that Ohio State was entitled to know how much Dr. Szeinbach had paid in fees and that if she became the prevailing party, that information was "relevant" and it would be helpful for "OSU [to] know that its exposure is in the lawsuit in terms of settlement ...."

After further discussion, Mr. Rosenberg said this about how much he might request in fees: "[A]s I explained earlier on it, this is what I'll be asking for based on what I received. *It is not the billing rate*." (Tr. 61)(emphasis supplied). In an earlier part of the same conference, OSU's counsel brought up the fact that they had not received a quarterly statement of fees and expenses in some time, and also noted that Mr. Rosenberg had not disclosed his hourly billing rate to Dr. Szeinbach, but "tells us what he got in some other case." Id. at 40. He responded that

he had "all kinds of hourly rates for clients, down to free," and
that he had recently itemized his fees "based on what I was
recently awarded by this Court." Id. at 41.  Mr. Rosenberg
testified at the hearing that he was referring to a case in which
he had been awarded fees at the rate of $275.00 per hour, and the
transcript of the status conference bears that out; he commented
that when he was an associate at Bricker and Eckler, his rate was
$225.00 per hour, and "I'd hope that I'm worth 50 bucks more
since then." Id.  Judge Abel also advised the parties that if
there were an attorneys' fee motion, Dr. Szeinbach "would have
the burden of proving the reasonableness of the attorney's fees
and the rate, which is generally the rate for an attorney of Mr.
Rosenberg's experience and years of practice in this community."
Id.

There is only one reasonable interpretation of these
comments, and it is not that Mr. Rosenberg had made some
commitment to seek fees only at the rates he used when billing
Dr. Szeinbach.  He said just the opposite, and there was a
discussion about the fact that he had, at that point, given Ohio
State a number based on a $275.00 per hour rate.  The Court
cannot construe that discussion to be an agreement on Mr.
Rosenberg's part to seek fees only at that rate even if the fee
matter was not resolved until 2017, and Judge Abel clearly
articulated the correct standard, so Ohio State cannot now argue
that it was misled in some way by statements made at the status
conference.  Even if it could make that argument, however, it has
no impact on the legal issues now before the Court.

The Court of Appeals, in <u>Bonkowski v. Allstate Ins. Co.</u>, 544
Fed. Appx. 597, 602 (6th Cir. Aug. 23, 2013), explained the
doctrine of judicial estoppel this way:

> "Judicial estoppel is an equitable doctrine that
> preserves the integrity of the courts by preventing a
> party from abusing the judicial process through cynical

gamesmanship, achieving success on one position, then
arguing the opposite to suit an exigency of the
moment." Teledyne Indus., Inc. v. Nat'l Labor Relations
Board, 911 F.2d 1214, 1217–18 (6th Cir.1990). "
'[W]here a party assumes a certain position in a legal
proceeding, and succeeds in maintaining that position,
he may not thereafter, simply because his interests
have changed, assume a contrary position, especially if
it be to the prejudice of the party who has acquiesced
in the position formerly taken by him.' " Lorillard
Tobacco Co. v. Chester, Willcox & Saxbe, LLP, 546 F.3d
752, 757 (6th Cir.2008) (quoting New Hampshire v.
Maine, 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d
968 (2001)). Thus, the doctrine "bars a party from (1)
asserting a position that is contrary to one that the
party has asserted under oath in a prior proceeding,
where (2) the prior court adopted the contrary position
either as a preliminary matter or as part of a final
disposition." Id. (citing Browning v. Levy, 283 F.3d
761, 775 (6th Cir.2002); Teledyne, 911 F.2d at 1218)
(internal quotations omitted).

Here, the Court did not adopt any position in response to
the comments made by Mr. Rosenberg at the status conference other
than the position that, should he move for fees, he would be
entitled to be paid at the prevailing market rate for an attorney
with similar experience. Further, Ohio State was unable to
identify any prejudice it suffered from his comments, or any way
in which its conduct in this case might have been different had
he not made those statements. Judicial estoppel simply does not
apply here.

The second estoppel argument advanced by Ohio State is no
more persuasive. Ohio State adduced some evidence at the hearing
that Mr. Rosenberg had said many times during the courts of the
trial that he was "alone" and trying a case against three
attorneys for the defendant. It did not direct the Court's or
any witness's attention to specific statements appearing in the
trial transcript, which is part of the record, so this argument
is somewhat difficult to put into precise context, but the Court

is willing to assume, for purposes of this Opinion, that Mr. Rosenberg made comments to that effect. In fact, Mr. Rosenberg had asked another attorney associated with his firm, Diane C. Jaquish, to sit through the entire trial as an observer and to consult with him about the progress of the case. Dr. Szeinbach has asked for Ms. Jaquish's fees to be paid as part of the Court's fee award. Ohio State contended that it would now be unfair to allow her to recover those fees because Mr. Rosenberg made misrepresentations about her participation to the Court and to the jury.

Again, looking at the elements of judicial estoppel, the Court did not adopt any specific position or make any rulings based upon Mr. Rosenberg's statements. Further, it cannot be inferred that the jury did so, because it was properly instructed not to consider such extraneous matters when reaching its verdict. Additionally, Ohio State did not articulate any reliance on those statements or any change in its litigation position or strategy because of them. It also admits that Ms. Jaquish actually spent the time she is claiming. While the Court does not condone any misrepresentations Mr. Rosenberg might have made on this subject - although, again, it is not necessary to actually determine if he said anything that was not true - such statements have no legal impact on the attorneys' fees issue now before the Court. There is a difference between a vague feeling of unfairness and a legal defense to an attorneys' fee petition, and this argument clearly falls into the former category. Consequently, the Court gives no weight to either of these arguments.

### III. Order

For the reasons stated above, the motion for attorneys' fees and costs (Doc. 358 as supplemented by Doc. 384) is granted in part. Plaintiff is awarded 938,560.53 in attorneys' fees.

Further, Plaintiff is awarded costs in the amount of $87,525.28. The Clerk is directed to enter a judgment in Plaintiff's favor in the amount of $1,026,085.81.

/s/ Terence P. Kemp
United States Magistrate Judge
